686 F.Supp. 743 (1988)
Maurice Oscar BYRD, Petitioner,
v.
Bill ARMONTROUT, Warden, Missouri State Prison, and Attorney General of the State of Missouri, Respondents.
No. 87-1966C-(1).
United States District Court, E.D. Missouri, E.D.
May 27, 1988.
Order and Memorandum June 9, 1988.
*744 *745 *746 *747 *748 *749 Burton Shostak, Moline, Ottsen, Mauze Leggat & Shostak, St. Louis, Mo., for petitioner.
William L. Webster, Atty. Gen., Jefferson City, Mo., for respondents.

MEMORANDUM
NANGLE, Chief Judge.

 Index
 Page
 I. Introduction ......................... 750
 II. Petitioner's Exhaustion of
 State Remedies ..................... 751
III. Habeas Grounds B, M, and Q:
 Unexhausted or Exhausted
 But Subject to Procedural
 Default ............................ 752
 A. Unexhausted or Exhausted .......... 753
 B. Procedural Default ................ 753
 IV. Habeas Grounds D and E ............... 755
 A. Missouri State Court
 Remedies Available to a
 Criminal Defendant By
 Which He Can Seek a
 New Trial Based upon
 Newly Discovered Evidence
 When the New
 Evidence is Discovered
 After the Defendant's
 Direct Appeal has been
 Completed ....................... 756

*750
 Page
 B. Do Petitioner's Failure to
 Raise His Claim of
 Newly Discovered Evidence
 in a Timely Filed
 Motion for New Trial in
 the Trial Court and Petitioner's
 Failure to Apply
 to the Governor of
 Missouri for Executive
 Clemency or Pardon
 Create Any Procedural
 Bars to this Court Considering
 Petitioner's
 Habeas Grounds D and
 E on their Merits? .............. 759
 C. Habeas Grounds D and E:
 Merits .......................... 760
 1. Habeas Ground D ............... 760
 2. Habeas Ground E ............... 762
 V. Habeas Grounds A, C, F, G,
 H, I, J, K, L, N, O, P, R,
 and S: Merits ...................... 763
 A. Habeas Grounds G, H, I,
 J, K, L, N, O, P, and S ......... 763
 1. Habeas Ground G ................ 763
 2. Habeas Ground H ................ 763
 3. Habeas Ground I ................ 763
 4. Habeas Ground J ................ 764
 5. Habeas Ground K ................ 767
 6. Habeas Ground L ................ 768
 7. Habeas Ground N ................ 770
 8. Habeas Ground O ................ 773
 9. Habeas Ground P ................ 774
 10. Habeas Ground S ................ 776
 B. Habeas Grounds A, C,
 and F ........................... 777
 1. Habeas Ground A ................ 778
 2. Habeas Ground C ................ 783
 3. Habeas Ground F ................ 784
 C. Habeas Ground R ................... 784
 VI. Petitioner's Motion for Discovery .... 784
VII. Conclusion ........................... 785

I. Introduction.

During the morning of October 23, 1980, four employees of Pope's Cafeteria in the West County Shopping Mall in St. Louis County, Missouri, were shot to death during a burglary which netted the burglars at least $4,000 and possibly over $8800. An employee of Pope's Cafeteria discovered the bodies at about 7:40 a.m. and the Police arrived on the scene at about 7:45 a.m. The State of Missouri charged petitioner Maurice Oscar Byrd with four counts of capital murder for his alleged participation in the murders. Petitioner maintains his innocence and denies any participation whatsoever in the events of October 23, 1980. Between August 9 and August 14, 1982, petitioner, represented by public defenders, was tried on the capital murder charges before a jury in the Circuit Court of St. Louis County. On August 14, 1982, the jury convicted petitioner of the four counts of capital murder. On December 7, 1982, the Court sentenced petitioner to death on each count.
On direct appeal, the Missouri Supreme Court, per Judge Gunn (now of the United States District Court for the Eastern District of Missouri), affirmed. State v. Byrd, 676 S.W.2d 494 (Mo. banc 1984), cert. denied, 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985). Petitioner filed a pro se post-conviction Missouri Rule 27.26 motion in the Circuit Court of St. Louis County. (Respondent's Exhibit F pp. 27-36). After an evidentiary hearing, the Circuit Court denied petitioner's Rule 27.26 motion. (Id. at pp. 16-23). On appeal, on November 12, 1986, the Missouri Court of Appeals affirmed. Byrd v. State, 723 S.W.2d 37 (Mo.App.1986), cert. denied, ___ U.S. ___, 108 S.Ct. 203, 98 L.Ed.2d 155 (1987), reh'g denied, ___ U.S. ___, 108 S.Ct. 360, 98 L.Ed.2d 385 (1987).
On November 24, 1986, petitioner's Rule 27.26 appellate attorney received a telephone call from a woman named "Anita" who purported to have personal knowledge of facts exculpating petitioner. (See Petitioner's Exhibit D). Therefore, on Monday, December 1, 1986, petitioner filed with the Missouri Court of Appeals a "Motion to Remand to the Trial Court for Hearing on Motion for New Trial Due to Newly Discovered Evidence," (Petitioner's Exhibit E, pp. 111-125), together with a "Motion for Leave to File Appellant's Exhibits and etc." (Id. at pp. 126-128). These motions were filed within petitioner's time to file with the Missouri Court of Appeals (and were filed contemporaneously with) petitioner's motion for rehearing on the November 12, 1986, decision, and/or transfer to the Missouri Supreme Court. (Id. at pp. 89-101; see Mo.R.Civ.P. 83.02). On December 5, 1986, the Missouri Court of Appeals denied without prejudice petitioner's "Motion to *751 Remand and etc." and "Motion for Leave to File Appellant's Exhibits and etc." (Petitioner's Exhibit E, p. 110, first item). On December 30, 1986, petitioner then filed a "Petition in Mandamus" with the Missouri Supreme Court seeking to compel the Missouri Court of Appeals to issue a ruling on the merits of petitioner's "Motion to Remand and etc." (Id. at pp. 69-82). On February 17, 1987, the Missouri Supreme Court denied petitioner's "Petition in Mandamus." (Id. at p. 68).
On May 18, 1987, petitioner filed a petition for certiorari with the United States Supreme Court. On October 5, 1987, the United States Supreme Court denied petitioner's petition for certiorari. Byrd v. Missouri, ___ U.S. ___, 108 S.Ct. 203, 98 L.Ed.2d 155 (1987). On October 6, 1987, the Missouri Supreme Court issued a warrant of execution for petitioner directing that petitioner "suffer death by the administration of lethal gas" on October 27, 1987. (See Attachments to Petitioner's October 23, 1987, Application for Stay of Execution and etc. filed in this Court). On October 23, 1987, petitioner filed in this Court a partially completed pro se petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. This Court stayed petitioner's execution pending further order of this Court and appointed counsel to represent petitioner in this federal habeas corpus proceeding. (See Orders, October 26, 1987, and November 30, 1987). On November 6, 1987, petitioner, through his appointed counsel, filed an Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus for a Person in State Custody. By his Amended Petition, together with a one-page amendment to the Amended Petition filed on December 7, 1987, petitioner raises nineteen grounds for federal habeas corpus relief denominated grounds (A) through (S).

II. Petitioner's Exhaustion of State Remedies.

In his direct appeal to the Missouri Supreme Court, petitioner raised eight points of error denominated Points I through VIII. (Respondent's Exhibit C). In his appeal to the Missouri Court of Appeals of the denial of his post-conviction Missouri Rule 27.26 motion, petitioner raised four points of error denominated Points I through IV. (Respondent's Exhibit H-1). Petitioner raises those twelve points in his Amended Petition for Habeas Corpus as his Habeas Grounds A, C, F, G, H, I, J, K, L, N, O, and S.[1]
Petitioner's Habeas Ground A (an ineffective assistance of trial counsel claim) contains two related points: first, petitioner's trial counsel was ineffective because he called Oscar Ford as a witness, and, second, said ineffectiveness was compounded by the fact that Ford had undergone hypnosis prior to his trial testimony. Petitioner raised the first of these points in state court as his Rule 27.26 Point I. Petitioner did not raise the second of these points in state court. However, respondents' Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted does not raise an exhaustion or procedural default objection to this second point. Rather, Respondents' Response addresses this second point on its merits during the Respondent's consideration of petitioner's Habeas Ground N, which Habeas Ground also concerns post-hypnotic testimony. (See Response at p. 80). The Court concludes therefore that, for the second point raised in Habeas Ground A, respondents have waived the exhaustion requirement and have waived petitioner's procedural default. Wade v. Armontrout, 798 F.2d 304, 306 n. 1 (8th Cir.1986); Purnell v. Missouri Department of Corrections, 753 F.2d 703, 708-10 (8th Cir.1985).
*752 Petitioner did not specifically raise his Habeas Ground P as a point relied upon in state court. However, the Missouri Supreme Court expressly considered and rejected this Habeas Ground. State v. Byrd, 676 S.W.2d at 503-504. Further, respondents' Response does not raise an exhaustion or procedural default objection to this Habeas Ground. Rather, respondents' Response addresses Habeas Ground P on the merits. (See Response at pp. 87-89). The Court therefore concludes that Habeas Ground P is exhausted or, alternatively, that, for Habeas Ground P, respondents have waived the exhaustion requirement and have waived any procedural default.
Petitioner did not raise his Habeas Ground R in state court. However, respondents' Response does not raise an exhaustion or procedural default objection to this Habeas Ground. Respondents' Response addresses Habeas Ground R on the merits. (See Response at p. 92). The Court therefore concludes that, for Habeas Ground R, respondents have waived the exhaustion requirement and have waived petitioner's procedural default.
Based upon the above, the Court concludes that petitioner's Habeas Grounds A, C, F, G, H, I, J, K, L, N, O, P, R, and S are exhausted and are not subject to any procedural bars. The Court will consider these fourteen Habeas Grounds on their merits in Section V below.
Respondents' Response states at page 3: "[P]etitioner has exhausted state remedies for his present claims unless a reservation appears in the `Statement As To Merits' section of this response." In the "Statement As To Merits" section of the Response, respondents indicate that petitioner's Habeas Grounds B, M, and Q have not been raised in state court, but are exhausted and subject to procedural default. (Response at pp. 20-21, p. 64 n. 7, and p. 89 n. 9). The Court will consider the effect of petitioner's failure to raise these three Habeas Grounds in state court in the next following Section III. In the "Statement As To Merits" section of the Response, respondents indicate that petitioner's Habeas Grounds D and E (which are closely connected to each other) are subject to various state procedural bars. (Id. at pp. 32-34 and p. 38). The Court will consider these Habeas Grounds together in Section IV below.

III. Habeas Grounds B, M, and Q: Unexhausted or Exhausted But Subject to Procedural Default.

As noted above, respondents have objected that petitioner did not raise his Habeas Grounds B, M, and Q in state court. If there is a state remedy available to petitioner for petitioner to raise these Habeas Grounds in state court, then these Habeas Grounds are not exhausted and petitioner's Amended Petition would be a mixed petition containing both exhausted and unexhausted claims. In accordance with the dictates of Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), such a mixed petition would have to be dismissed without prejudice unless petitioner (after being duly warned about the risk of forfeiting future consideration of deleted unexhausted claims in subequent federal habeas corpus petitions) opted to delete his unexhausted claims.
Respondents assert that there is no state remedy available to petitioner for petitioner to raise these Habeas Grounds in state court. Specifically, respondents assert that a successive Rule 27.26 motion is not available for these Habeas Grounds because petitioner could have raised these Habeas Grounds in his prior Rule 27.26 motion and petitioner does not have good cause for his failure to raise these Habeas Grounds in that prior Rule 27.26 motion. In accordance with respondents' view, petitioner's Amended Petition is not a mixed petition because petitioner's Habeas Grounds B, M, and Q are exhausted because there is no state remedy available to petitioner for petitioner to raise them in state court, and specifically because a successive Rule 27.26 motion is not available. However, respondents also assert that, because petitioner did fail to raise these Habeas Grounds in state court, petitioner has procedurally defaulted these Habeas Grounds, and said procedural default is a bar to this Court from considering these Habeas Grounds on *753 their merits in this federal habeas corpus proceeding unless petitioner can show "cause" for his procedural default and "actual prejudice" resulting from the errors raised in these Habeas Grounds. See Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

A. Unexhausted or Exhausted.
Rule 27.26(d) did permit successive post-conviction motions under certain circumstances. However, effective January 1, 1988, Missouri repealed Rule 27.26 and replaced it with Rules 24.035 and 29.15. Thus, because Rule 27.26 has been repealed, petitioner cannot now file a successive Rule 27.26 motion.
Rule 29.15 applies to petitioner because he was convicted of a felony after a trial. (Rule 24.035 applies to persons convicted of a felony on a plea of guilty.) Petitioner was sentenced on December 7, 1982. Rule 29.15(m) permits a person sentenced prior to January 1, 1988, to file a Rule 29.15 motion only if the person has not filed a prior Rule 27.26 motion. Thus, because petitioner has filed a prior Rule 27.26 motion, petitioner cannot now file a Rule 29.15 motion.
Rule 29.15 does not specifically provide that a person such as petitioner who was sentenced prior to January 1, 1988, and who has already completed one Rule 27.26 motion cannot now file any post-conviction motions. However, the Court does not believe that this omission creates any ambiguity in the application of Missouri's new post-conviction remedy procedure. First, the plain operative effect of the repeal of Rule 27.26 combined with the fact that by its terms Rule 29.15 does not permit petitioner to file a Rule 29.15 motion is that petitioner cannot now file any post-conviction motions. Second, because petitioner has filed a prior Rule 27.26 motion, petitioner's present inability to seek further post-conviction relief in Missouri state court is consistent with Rule 29.15(k) which expressly prohibits the filing of successive post-conviction motions. Compare Rule 29.15(k) and Rule 24.035(k) with Rule 27.26(d). See also Morris, Postconviction Practice Under the "New 27.26", 1987 J.Mo.Bar 435, 438.[2]
Petitioner cannot now raise his Habeas Grounds B, M, and Q in state court by way of a post-conviction motion. Therefore, there is no state remedy available for petitioner to exhaust with respect to these Habeas Grounds, these Habeas Grounds are exhausted, and thus petitioner's Amended Petition is not a mixed petition.

B. Procedural Default.
Petitioner's Habeas Grounds B, M, and Q are ineffective assistance of trial counsel claims. Habeas Ground B concerns petitioner's trial counsel's failure to present the exculpatory substance of the testimony of witness Oscar Ford by means other than calling Ford to testify. (Specifically, petitioner contends that his trial counsel should have presented the exculpatory substance of Ford's testimony by means of a certain videotape or by means of the testimony of the investigating officer on the day of the murders.)[3] Habeas *754 Ground M concerns petitioner's trial counsel's failure to investigate the whereabouts of petitioner's first wife and thereafter to interview her so as to be able to establish the validity of petitioner's marriage to his second wife so that the trial court would have sustained petitioner's claim of marital privilege regarding the testimony of his second wife and so that the trial court would not have permitted his second wife to testify against him.[4] Habeas Ground Q concerns petitioner's trial counsel's failure to cross-examine six witnesses regarding the $20,000 reward offered by Pope's Cafeteria for information regarding the murders. As noted above, petitioner did not raise these three Habeas Grounds in state court and petitioner cannot now raise these three Habeas Grounds in state court. However, petitioner could have raised these three ineffective assistance of trial counsel claims in his Rule 27.26 motion. Therefore, petitioner has committed a state procedural default. That state procedural default is a bar to this Court considering petitioner's Habeas Grounds B, M, and Q on their merits in this federal habeas corpus proceedings unless petitioner can (1) show adequate "cause" explaining why he did not raise the claims in state court, and (2) "actual prejudice" resulting from the alleged constitutional violations. Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987), cert. denied, ___ U.S. ____, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988); Worthan v. Wyrick, 805 F.2d 303, 305 (8th Cir.1986), cert. denied, ___ U.S. ____, 107 S.Ct. 1901, 95 L.Ed.2d 507 (1987). See Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed. 2d 594 (1977).
The "cause" required by Wainwright v. Sykes is not established by "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it." Murray v. Carrier, 477 U.S. 478, 486, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Id. at 488, 106 S.Ct. at 2645. Further, "cause" is not established by ineffective assistance of Rule 27.26 counsel. See Williams v. State of Missouri, 640 F.2d 140, 143-144 (8th Cir.), cert. denied, 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed.2d 849 (1981).
Petitioner has presented no reasons whatsoever for his failure to raise in his Rule 27.26 motion the ineffective assistance of trial counsel claims contained in his Habeas Grounds B, M, and Q. Further, it is clear that, at the time he filed his Rule 27.26 motion, petitioner was thoroughly familiar with the circumstances surrounding his trial counsel's decision to call Ford as a witness. (See Respondent's Exhibit F, p. 30; Respondent's Exhibit H-1, Point I). Likewise, it is clear that, at the time he filed his Rule 27.26 motion, petitioner was thoroughly familiar with the circumstances surrounding the testimony of his second *755 wife. (See Respondent's Exhibit C, Points III, IV, and V; see also State v. Byrd, 676 S.W.2d at 500-504). In addition, there is no indication that petitioner was not aware, at the time he filed his Rule 27.26 motion, that his trial counsel had failed to cross-examine witnesses regarding the reward money. Finally, the mere fact that petitioner's Rule 27.26 motion was drafted and filed pro se does not in and of itself constitute "cause" for failure to include a ground therein. Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir.1988). Based upon the foregoing, the Court concludes that petitioner has failed to establish "cause" for his failure to raise his Habeas Grounds B, M, and Q in state court in his Rule 27.26 motion. Because petitioner has not established "cause," the Court does not need to examine whether petitioner suffered "actual prejudice." Engle v. Isaac, 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 1575 n. 43, 71 L.Ed.2d 783 (1982); Leggins v. Lockhart, 822 F.2d 764, 768 (8th Cir.1987), cert. denied, ___ U.S. ____, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988).[5]
For the foregoing reasons, the Court concludes that procedural default is a bar to this Court considering petitioner's Habeas Grounds B, M, and Q on their merits in this federal habeas corpus proceeding. Therefore, petitioner's Amended Petition Habeas Grounds B, M, and Q are denied on the basis of procedural default.

IV. Habeas Grounds D and E.

As noted above in Section I, on November 24, 1986, over four years after the jury verdict, and after petitioner had completed his direct appeal, and after the Missouri *756 Court of Appeals had rendered its decision in petitioner's appeal of his Rule 27.26 motion, petitioner's appellate attorney received a telephone call from a woman named "Anita" who purported to have personal knowledge of facts exculpating petitioner. (See Petitioner's Exhibit D). Petitioner sought relief in Missouri state court on the basis of "Anita's" proposed testimony by filing in the Missouri Court of Appeals a "Motion to Remand to the Trial Court for Hearing on Motion for New Trial Due to Newly Discovered Evidence" (Petitioner's Exhibit E, pp. 111-125) and a "Motion for Leave to File Appellant's Exhibits and etc." (Id. at pp. 126-128). Petitioner also sought mandamus relief in the Missouri Supreme Court. (Id. at pp. 69-82).
In Habeas Grounds D and E, petitioner contends that "Anita's" proposed testimony is newly discovered evidence. In Habeas Ground D, petitioner contends that due process mandates that he be granted a new trial based upon this newly discovered evidence. In Habeas Ground E, petitioner contends that his Eighth Amendment rights have been violated because Missouri does not have a post-conviction court procedure by which he can file a motion in the nature of a motion for new trial based upon newly discovered evidence when the new evidence is discovered after the direct appeal process has been completed.
Respondents contend that petitioner's Habeas Ground D is subject to two separate procedural bars: first, petitioner failed to raise this claim in a timely filed motion for new trial in the trial court, and, second, petitioner has deliberately bypassed an available state remedy by which he can assert his entitlement to a new trial based upon the newly discovered evidence, that is, petitioner has failed to apply to the Governor of Missouri for executive clemency or pardon pursuant to the Missouri Constitution Article IV, § 7.[6] (Respondents' Response at pp. 32-34). Respondents contend that petitioner's Habeas Ground E also is subject to a procedural bar because he has failed to apply to the Governor for executive clemency or pardon. (Id. at p. 38). Respondents also contend that these two Habeas Grounds fail on their merits. (Id. at pp. 34-38).

A. Missouri State Court Remedies Available to a Criminal Defendant By Which He Can Seek a New Trial Based upon Newly Discovered Evidence When the New Evidence is Discovered After the Defendant's Direct Appeal has been Completed.
In Missouri, a criminal defendant must file a motion for new trial based upon newly discovered evidence with the trial court "within fifteen days after the return of the verdict." Mo.R.Crim.P. 29.11(b). The trial court may extend the time for filing such a motion for "one additional period not to exceed ten days" if the defendant so requests "within fifteen days after the return of the verdict." Id. The time restrictions in Rule 29.11(b) must be strictly complied with and the trial court, without an order from an appellate court, cannot entertain a motion for new trial based upon newly discovered evidence filed outside those time restrictions even if the new evidence is discovered outside those time restrictions. The Missouri Rules of *757 Criminal Procedure simply do not contain a vehicle by which a criminal defendant can file a motion for new trial based upon newly discovered evidence when the new evidence is discovered after the time period contained in Rule 29.11(b) has already expired. State v. Hamilton, 732 S.W.2d 553, 555 (Mo.App.1987). The time period for petitioner to file a Rule 29.11 motion for new trial based upon newly discovered evidence expired at the latest 25 days after August 16, 1982, the date the jury rendered its verdict against petitioner in the sentencing phase of petitioner's trial. Petitioner did not discover his new evidence until 1986. Thus, Rule 29.11 does not provide petitioner with a state remedy by which he can seek a new trial based upon his newly discovered evidence.
In Missouri, post-conviction relief on the basis of newly discovered evidence was not available pursuant to a Rule 27.26 motion (prior to the repeal of Rule 27.26). State v. Mims, 674 S.W.2d 536, 538 (Mo. banc 1984); Westmoreland v. State, 594 S.W.2d 596, 598 (Mo. banc 1980); Turnbough v. State, 574 S.W.2d 400, 404 (Mo. banc 1978); Beishir v. State, 480 S.W.2d 883 (Mo.1972); Hatfield v. State, 529 S.W.2d 180, 181-182 (Mo.App.1975). Therefore, in November, 1986, prior to the repeal of Rule 27.26, petitioner could not obtain relief based upon his newly discovered evidence through a successive Rule 27.26 motion pursuant to Rule 27.26(d). Thus, Rule 27.26 did not provide petitioner with a state remedy by which he could seek post-conviction relief based upon his newly discovered evidence. Further, petitioner cannot file a Rule 29.15 motion because he has filed a prior Rule 27.26 motion. See Rule 29.15(m); see also Section III.A. above. In addition, based upon the Missouri law under Rule 27.26, the Court concludes that post-conviction relief on the basis of newly discovered evidence is not available pursuant to a Rule 29.15 motion. Thus, for these two reasons, Rule 29.15 does not provide petitioner with a state remedy by which he can seek post-conviction relief based upon his newly discovered evidence.
In Missouri, the Writ of Error Coram Nobis is not available to persons who have not completed their sentences. State v. Mims, 674 S.W.2d 536, 538 (Mo. banc 1984). Therefore, persons who have not completed their sentences may not obtain relief on the basis of newly discovered evidence through the Writ of Error Coram Nobis. State v. Mooney, 670 S.W.2d 510, 515 (Mo.App. 1984); State v. Coffman, 647 S.W.2d 849, 852 (Mo.App.1983); Hatfield v. State, 529 S.W.2d 180, 181-182 (Mo.App.1975). Thus, the Writ of Error Coram Nobis does not provide petitioner, a person who has not completed his sentence, with a state remedy by which he can seek post-conviction relief based upon his newly discovered evidence. Similarly, the Missouri state Writ of Habeas Corpus is not available for claims of newly discovered evidence. State v. Cerny, 365 Mo. 732, 286 S.W.2d 804, 806-808 (1956).
The Missouri Court of Appeals has recognized that, because Rule 27.26, the Writ of Error Coram Nobis, and the Missouri Writ of Habeas Corpus do not provide relief for claims of newly discovered evidence, there is no express Missouri procedure by which criminal defendants may present claims of newly discovered evidence to the Missouri courts when the new evidence is discovered after the time to file a Rule 29.11 motion has expired. State v. Hamilton, 732 S.W.2d 553, 555 (Mo.App. 1987); State v. Mooney, 670 S.W.2d 510, 513-515 (Mo.App.1984). The Missouri Court of Appeals has recognized that the only express means by which a criminal defendant can seek relief based on such newly discovered evidence is by an application to the Governor of Missouri for executive clemency or pardon pursuant to the Missouri Constitution Article IV, § 7. Hamilton, 732 S.W.2d at 555 n. 2; Mooney, 670 S.W.2d at 513. See Whitaker v. State, 451 S.W.2d 11, 15 (Mo.1970); State v. Johnson, 286 S.W.2d 787, 796 (Mo.1956). In light of the above, the Missouri Court of Appeals has determined that, when a criminal defendant's conviction is on direct appeal and when a criminal defendant has discovered new evidence after the time to *758 file a Rule 29.11 motion has expired, the Missouri Court of Appeals may, either under the plain error doctrine or pursuant to its inherent power, remand the case to the trial court in order to permit the criminal defendant to file a new trial motion based upon the newly discovered evidence. Hamilton, 732 S.W.2d at 555; Mooney, 670 S.W.2d at 515.[7]
To date, the Missouri Court of Appeals has exercised this power to remand on the basis of newly discovered evidence only in cases which were on direct appeal of the criminal defendant's conviction. The Missouri Court of Appeals never exercised this power to remand on the basis of newly discovered evidence in Rule 27.26 post-conviction proceedings (which, of course, occurred after the direct appeal had been completed). This Court concludes that, because Rule 27.26 was not available to obtain relief on the basis of newly discovered evidence, see Westmoreland v. State, 594 S.W.2d 596, 598 (Mo. banc 1980), the Missouri Court of Appeals would have concluded that, in a Rule 27.26 proceeding on appeal to the Missouri Court of Appeals, it did not have the power to remand the case to the trial court to permit the filing of a motion for new trial based upon new evidence discovered after the criminal defendant's direct appeal had been completed (and, of course, after the time to file a Rule 29.11 new trial motion had expired). Because petitioner discovered his new evidence on November 24, 1986, during the course of his Rule 27.26 appeal and after his direct appeal had been completed, the Missouri Court of Appeals did not have the power to remand petitioner's case to the trial court to permit petitioner to file a new trial motion on the basis of his newly discovered evidence.[8] Thus, the Missouri Court of Appeals' power to remand a case on direct appeal to the trial court to permit the filing of a new trial motion did not provide petitioner with a state remedy by which he could seek post-conviction relief on the basis of his new evidence discovered after his direct appeal was completed and during the course of his Rule 27.26 appeal.
Based upon the foregoing, this Court concludes that, because petitioner discovered his new evidence after his direct appeal was completed, there are no Missouri state court procedures by which petitioner can present or could have presented his Habeas Ground D claim based upon newly discovered evidence to the Missouri courts and by which petitioner can seek or could have sought a new trial from the Missouri courts based upon his newly discovered evidence. Petitioner's Habeas Ground D claim based upon newly discovered evidence thus presents the unusual situation where there is "an absence of available State [court] corrective process" for the claim. 28 U.S.C. § 2254(b). The only means by which petitioner could seek relief based upon his newly discovered evidence was by an application to the Governor of Missouri for executive clemency or pardon pursuant to the Missouri Constitution Article IV, § 7. Whitaker v. State, 451 S.W.2d 11, 14 (Mo.1970); State v. Mooney, 670 S.W.2d 510, 513 (Mo.App.1984).

*759 B. Do Petitioner's Failure to Raise His Claim of Newly Discovered Evidence in a Timely Filed Motion for New Trial in the Trial Court and Petitioner's Failure to Apply to the Governor of Missouri for Executive Clemency or Pardon Create Any Procedural Bars to this Court Considering Petitioner's Habeas Grounds D and E on their Merits?
First, petitioner discovered his new evidence after the time within which he could file a timely Rule 29.11 motion for new trial based upon newly discovered evidence had already expired. Therefore, as discussed in Section IV.A. above, Rule 29.11 was not available to petitioner for him to file a new trial motion based upon his newly discovered evidence. Thus, petitioner's failure to file in the trial court a timely motion for new trial based upon newly discovered evidence does not create any procedural bar to this Court considering petitioner's Habeas Ground D on its merits.
Second, in order for a federal court to consider on its merits a federal habeas corpus petitioner's claim for relief, the habeas petitioner must first pursue and exhaust the state court remedies that are available to him for him to present the claim to the state courts. 28 U.S.C. § 2254(b); Rose v. Lundy, 455 U.S. 509, 515-20, 102 S.Ct. 1198, 1201-04, 71 L.Ed.2d 379 (1982); Ex Parte Royall, 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886). It is clear from the language of § 2254(b) and from Rose v. Lundy that this exhaustion requirement requires exhaustion only of state court remedies. The exhaustion doctrine simply has no application whatsoever to, and does not require pursuit or exhaustion of, state executive clemency or pardon procedures. Thus, petitioner's failure to apply to the Governor of Missouri for executive clemency or pardon does not render petitioner's Habeas Grounds D and E unexhausted and does not make petitioner's Amended Petition a mixed petition. See Smith v. State of Mississippi, 478 F.2d 88, 92 n. 6 (5th Cir.), cert. denied, 414 U.S. 1113, 94 S.Ct. 844, 38 L.Ed.2d 740 (1973).[9]
Third, a federal habeas corpus petitioner's failure to properly pursue the state court remedies that were available for him to present his claim to the state courts (and which state court remedies he must exhaust because of the exhaustion doctrine) may result in a state procedural default which bars future state court consideration of the claim on its merits. Such a state procedural default may result in an adequate and independent state procedural ground barring federal court consideration of the claim on its merits. Wainwright v. Sykes, 433 U.S. 72, 80-83, 97 S.Ct. 2497, 2503-2504, 53 L.Ed.2d 594 (1977); Fay v. Noia, 372 U.S. 391, 399, 83 S.Ct. 822, 827, 9 L.Ed.2d 837 (1963). It is clear from Wainwright v. Sykes and Fay v. Noia that only a procedural default in a state court remedy can result in a procedural bar to federal court consideration of a habeas claim on its merits. The failure to pursue state executive clemency or pardon procedures cannot result in a procedural bar to federal court consideration of a habeas claim on its merits. Thus, petitioner's failure to apply to the Governor of Missouri for executive clemency or pardon does not create any procedural bar to this Court considering petitioner's Habeas Grounds D and E on their merits. Cf. Smith v. State of Mississippi, 478 F.2d 88, 92 n. 6 (5th Cir.), cert. denied, 414 U.S. 1113, 94 S.Ct. 844, 38 L.Ed.2d 740 (1973).[10]
*760 Fourth, if this Court is incorrect in its conclusion in Section IV.A. above that the Missouri Court of Appeals did not have the power to remand petitioner's case to the trial court in order to permit him to file a new trial motion based upon his newly discovered evidence, and if the Missouri Court of Appeals does in fact have that power such that a motion to remand directed to the Missouri Court of Appeals was a state remedy available to petitioner for him to present his claim based upon newly discovered evidence to the state courts, then petitioner clearly has exhausted Habeas Ground D by pursuing that available remedy by filing: his "Motion to Remand and etc.," his "Motion for Leave to File Appellant's Exhibits and etc.," and his "Petition in Mandamus," and petitioner clearly is not subject to any procedural bar with respect to that remedy.
For the foregoing reasons, this Court concludes that there are no procedural bars to this Court considering petitioner's Habeas Grounds D and E on their merits.

C. Habeas Grounds D and E: Merits.

1. Habeas Ground D.

Petitioner contends that due process mandates that he be granted a new trial based upon his newly discovered evidence, "Anita's" proposed testimony. No Missouri court with the power to grant petitioner a new trial has considered petitioner's argument. (See Section IV.A. above; but cf. Petitioner's Exhibit E, pp. 111-125, pp. 126-128, p. 110, first item, pp. 69-82, and p. 68).
In Townsend v. Sain, 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963), the Supreme Court stated that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." The Eighth Circuit consistently has interpreted this statement to mean that newly discovered evidence generally is not a basis for federal habeas corpus relief, and that, for newly discovered evidence to warrant federal habeas corpus relief in the form of a new trial, the new evidence must be such that the new evidence "would probably produce an acquittal on retrial." Mastrian v. McManus, 554 F.2d 813, 822-823 (8th Cir.), cert. denied, 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977); accord Hall v. Lockhart, 806 F.2d 165, 168 (8th Cir.1986); Drake v. Wyrick, 640 F.2d 912, 913-914 (8th Cir.1981); Pruitt v. Housewright, 624 F.2d 851, 852 (8th Cir.1980). Cf. Walker v. Lockhart, 763 F.2d 942 (8th Cir. en banc 1985), cert. denied, ___ U.S. ____, 106 S.Ct. 3332, 92 L.Ed.2d 738 (1986); but cf. id. at 962 (dissent).[11] Likewise, because an evidentiary hearing is required in a federal habeas corpus proceeding only if "the petitioner's allegations, if proven, would establish the right to his release," Jensen v. Satran, 651 F.2d 605, 608 (8th Cir.1981), cert. denied, 460 U.S. 1007, 103 *761 S.Ct. 1244, 75 L.Ed.2d 475 (1983), accord Edgemon v. Lockhart, 768 F.2d 252, 255 (8th Cir.1985), an evidentiary hearing on petitioner's claim for relief based upon his newly discovered evidence is required only if petitioner's newly discovered evidence, if proven, would "probably produce an acquittal on retrial." Hall, 806 F.2d at 168; Pruitt, 624 F.2d at 852.
Petitioner's newly discovered evidence is the following: "Anita," a 54 year old housewife from suburban St. Louis County who describes herself as a daily shopper at the West County Shopping Mall, arrived at the Mall early on the morning of October 23, 1980 (the day of the Pope's Cafeteria murders), before the Mall opened, to return some shoes she had purchased the night before. She parked facing the Mall exit near Pope's Cafeteria. She observed a whitewashed panel truck parked nearby. She observed two black men exit the Mall from the Mall exit near Pope's Cafeteria. These men wore white coverall jumpsuits. The men appeared to be just finishing putting on the jumpsuits. One of the men carried a white sack. "Anita" spoke to the two men. The men identified themselves as painters and informed "Anita" that the Mall was closed. One of the men offered to let "Anita" into the Mall, but the other man indicated that they had to go. The two men drove away in the whitewashed panel truck. "Anita" has seen a picture of petitioner and can positively testify that petitioner was not one of the two men whom she encountered on the parking lot of the West County Shopping Mall early on the morning of October 23, 1980. (In addition, "Anita" is familiar with petitioner's face because she saw him working at the Mall several weeks prior to the murders and had exchanged greetings with him at that time.) (See Petitioner's Exhibit D; see also Petitioner's Amended Petition Habeas Ground D at pp. 11-12; Petitioner's Reply to Respondent's Response at pp. 26-28).
"Anita" has an explanation for the fact that she did not come forward with her evidence for six years. On November 24, 1986, "Anita" telephoned petitioner's Rule 27.26 appellate attorney and gave the above account. (Id.) Petitioner contends that "Anita's" proposed testimony entitles him to a new trial because her proposed testimony, based upon her own personal knowledge, exculpates petitioner and, if believed by a jury, "would probably produce an acquittal on retrial." Mastrian, 554 F.2d at 823.
Assuming that the events described by "Anita" occurred before 7:45 a.m.,[12] and assuming that a jury would find "Anita's" proposed testimony to be credible and true despite the fact that she did not come forward with her evidence for six years,[13] the Court concludes that "Anita's" proposed testimony, when viewed in the context of the state's evidence inculpating petitioner, would not "probably produce an acquittal on retrial." Mastrian, 554 F.2d at 823.[14]
*762 "Anita's" proposed testimony does not conflict with the inculpatory evidence against petitioner. The truth of her proposed testimony is not inconsistent with the truth of the inculpatory evidence against petitioner or with petitioner's guilt. The fact that petitioner was not one of two men dressed as painters leaving the Mall exit near Pope's Cafeteria before 7:45 a.m. on October 23, 1980, does not mean that petitioner did not commit the robbery and murders at Pope's Cafeteria that morning. Further, "Anita's" proposed testimony that these two men left the Mall from the exit near Pope's Cafeteria does not establish that these two men were in Pope's Cafeteria or were involved in the murders. In addition, "Anita's" proposed testimony does not establish that petitioner did not commit the murders at Pope's Cafeteria either before or after the time that "Anita" was at the West County Shopping Mall. In sum, "Anita's" proposed testimony does not appreciably undermine the probative strength of the state's inculpatory evidence against petitioner and does not appreciably decrease the weight of the state's case against petitioner. For these reasons, the Court concludes that "Anita's" proposed testimony, even if believed by a jury, would not "probably produce an acquittal on retrial." Mastrian, 554 F.2d at 823. The Court therefore concludes that petitioner is not entitled to a new trial based upon his newly discovered evidence, "Anita's" proposed testimony, and that petitioner is not entitled to federal habeas corpus relief based upon that newly discovered evidence. Id. Likewise, the Court concludes that petitioner is not entitled to an evidentiary hearing on his claim for federal habeas corpus relief based upon that newly discovered evidence because, even if that evidence were believed by a jury, the evidence would not "probably produce an acquittal on retrial." Hall, 806 F.2d at 168; Pruitt, 624 F.2d at 852.
For the foregoing reasons, petitioner's Amended Petition Habeas Ground D is denied on its merits.

2. Habeas Ground E.

Petitioner contends that his Eighth Amendment rights have been violated because Missouri does not have a post-conviction court procedure by which he can file a motion in the nature of a motion for new trial based upon his newly discovered evidence, "Anita's" proposed testimony. Because petitioner discovered his new evidence after his direct appeal was completed, Missouri does not have any post-conviction court procedure by which he can raise his claim of entitlement to a new trial. (See Section IV.A. above). No Missouri court has considered petitioner's argument.
"[T]here is no federal constitutional requirement that the state provide a means of post-conviction review of state convictions." Williams v. State of Missouri, 640 F.2d 140, 143 (8th Cir.), cert. denied, 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed.2d 849 (1981). The existence of state post-conviction court procedures is relevant only to determine if the federal habeas corpus petitioner has exhausted his state remedies or has committed a state procedural default. Id. Therefore, petitioner's argument that he has been denied federal constitutional rights due to the fact that Missouri does not have a post-conviction court procedure by which he can raise his claim of entitlement to a new trial is without merit.[15]
For the foregoing reasons, petitioner's Amended Petition Habeas Ground E is denied on its merits.

*763 V. Habeas Grounds A, C, F, G, H, I, J, K, L, N, O, P, R, and S: Merits.

Petitioner's Habeas Grounds G, H, I, J, K, L, N, O, P, and S are substantive claims relating to his trial and sentencing. The Court will address these claims first. Petitioner's Habeas Grounds A, C, and F are ineffective assistance of trial counsel claims. The Court will address these claims thereafter. Petitioner's Habeas Ground R is a claim that the cumulative effect of all his other Habeas Grounds was to deny him various constitutional rights. The Court will address this claim last.

A. Habeas Grounds G, H, I, J, K, L, N, O, P, and S.

1. Habeas Ground G.

Petitioner contends that he was denied his Sixth Amendment right to a fair and impartial jury selected from a fair cross-section of his peers because the jury was "death qualified" or "Witherspooned" in that the two jurors opposed to the death penalty were struck for cause. On direct appeal, the Missouri Supreme Court considered and rejected petitioner's argument. State v. Byrd, 676 S.W.2d at 499. Both veniremen were struck because they stated that they could not impose the death penalty under any circumstances. (Respondent's Exhibit A, Trial Transcript [hereinafter "Tr.Tr."] Vol. I: Venireman Guadi, p. 65, l. 24 through p. 68, l. 6; Venireman Hudson, p. 69, l. 8 through p. 70, l. 21). Therefore, both veniremen were "Witherspoon excludibles" and petitioner's Habeas Ground G is without merit. Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
For the foregoing reasons, petitioner's Amended Petition Habeas Ground G is denied on its merits.

2. Habeas Ground H.

Petitioner contends that he was denied his Fourteenth Amendment due process rights and his Eighth Amendment right not to be subjected to cruel and unusual punishments because in Missouri the death penalty is sought and inflicted disproportionately against blacks. Petitioner is black. On direct appeal, the Missouri Supreme Court considered and rejected petitioner's argument. State v. Byrd, 676 S.W.2d at 505-506. Because petitioner's contention could not prove that "the decisionmakers in his case acted with discriminatory purpose" and could not prove that the death penalty was disproportionate to his crime, petitioner's Habeas Ground H is without merit. McCleskey v. Kemp, ___ U.S. ___, 107 S.Ct. 1756, 1766, 1774, 95 L.Ed.2d 262 (1987) (emphasis in original).
For the foregoing reasons, petitioner's Amended Petition Habeas Ground H is denied on its merits.

3. Habeas Ground I.

Petitioner contends that he was denied his Sixth and Fourteenth Amendment rights to an impartial jury because the trial court denied his request for sequestered individual voir dire regarding death qualification and pretrial publicity. The voir dire was conducted in panels of twelve. With respect to pretrial publicity, petitioner contends that, as a result of the group voir dire, veniremen heard prejudicial remarks made by other veniremen. On direct appeal, the Missouri Supreme Court considered and rejected petitioner's argument. State v. Byrd, 676 S.W.2d at 499-500.
First, sequestered individual death qualifying voir dire is not constitutionally dictated. The death qualifying voir dire may be conducted in groups, and the fact that it is conducted in groups does not, without more, result in an impartial jury. Trujillo v. Sullivan, 815 F.2d 597, 606-607 (10th Cir.), cert. denied, ___ U.S. ___, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987); McCorquodale v. Balkcom, 721 F.2d 1493, 1495-1496 (11th Cir.1983), cert. denied, 466 U.S. 954, 104 S.Ct. 2161, 80 L.Ed.2d 546 (1984); see Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (Upholding death penalty based upon a death qualified jury where individual jurors were death qualified in the presence of the other jurors. 477 U.S. at 176-178, 106 S.Ct. at 2469-71.) Further, assuming that group *764 voir dire death qualification does result in a more "conviction-prone" jury, that fact would not mean that petitioner was denied his right to a jury selected from a fair cross-section of the community, Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 1764-1766, 90 L.Ed.2d 137 (1986), or his right to an impartial jury. Id. 106 S.Ct. at 1767-1770.
Second, the trial court did deny petitioner's request that all aspects of the voir dire regarding pretrial publicity be sequestered individual voir dire. Instead, the trial court decided that the voir dire regarding pretrial publicity would be conducted as follows: general questions regarding pretrial publicity would be posed to the prospective jurors in groups of twelve and then, at a sidebar conference out of the hearing of the other members of the group of twelve, more specific questions regarding pretrial publicity would be posed to specific individual prospective jurors who indicated familiarity with pretrial publicity. (Tr.Tr. Vol. I: p. 12, ll. 13-21). Such private sidebar conference voir dire was held for many prospective jurors. Thus, as a general rule, the trial court did hold sequestered individual voir dire for those prospective jurors who did indicate familiarity with pretrial publicity. However, one prospective juror, in response to a voir dire question regarding pretrial publicity posed by petitioner's attorney, indicated in the presence of his entire group of twelve that he had heard a news report that petitioner had been arrested in Georgia on an unrelated murder charge. (Id. at p. 149, ll. 11-17). The trial court concluded that petitioner's attorney had invited the remark by asking a question which probed too much and therefore the trial court overruled petitioner's motion to discharge the jury. (Id. at p. 151, ll. 24-25 and p. 152, l. 24). The Missouri Supreme Court agreed that petitioner's attorney had invited the remark and thus could not complain. In addition, the Missouri Supreme Court concluded that actual prejudicea jury influenced by or made impartial by the remarkcould not result from this single isolated remark. State v. Byrd, 676 S.W.2d at 500. The conclusion by the Missouri Supreme Court that the jury could not have been prejudicially influenced by the remark was a factual determination that the voir dire had not resulted in an impartial jury. This factual determination is entitled to the 28 U.S.C. § 2254(d) presumption of correctness. Patton v. Yount, 467 U.S. 1025, 1036-1038, 104 S.Ct. 2885, 2891-2892, 81 L.Ed.2d 847 (1984) (whether voir dire results in an impartial jury is a question of fact entitled to the § 2254(d) presumption of correctness); Sumner v. Mata, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981) (factual determination by appellate court entitled to the § 2254(d) presumption of correctness); Simmons v. Lockhart, 814 F.2d 504, 511 (8th Cir.1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1489, 99 L.Ed.2d 717 (1988). Because there is fair support in the record for the Missouri Supreme Court's finding of fact that the voir dire did not result in an impartial jury and because petitioner has not otherwise overcome the presumption of correctness which attaches to that factual determination, see 28 U.S.C. § 2254(d)(8), the trial court's denial of petitioner's request that all aspects of the voir dire regarding pretrial publicity be sequestered individual voir dire did not deny petitioner his Sixth and Fourteenth Amendment rights to an impartial jury. 28 U.S.C. § 2254(d).
For the foregoing reasons, petitioner's Amended Petition Habeas Ground I is denied on its merits.

4. Habeas Ground J.

Petitioner contends that he was denied various constitutional rights because the state called his second wife, Saundra Yvonne Byrd (hereinafter "Mrs. Byrd"), to testify as a witness for the state and then interrogated her as a hostile witness with leading questions and then impeached her testimony. On direct appeal, the Missouri Supreme Court considered and rejected petitioner's argument. State v. Byrd, 676 S.W.2d at 502-503.
First, with respect to the trial court's decision to permit the state to interrogate Mrs. Byrd as a hostile witness with leading questions, this was a procedural or *765 evidentiary ruling concerning the proper method for presentation of proof. Because federal habeas corpus relief is available only if a person is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), petitioner is entitled to federal habeas corpus relief on the basis of that ruling only if the ruling was erroneous under state law and resulted in a denial of due process. Wood v. Lockhart, 809 F.2d 457, 459-460 (8th Cir.1987); Maggitt v. Wyrick, 533 F.2d 383, 385 (8th Cir.), cert. denied, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976). The trial court's decision to permit the state to interrogate Mrs. Byrd as a hostile witness with leading questions was based upon an implied factual determination that the state had established sufficient hostility under state law to permit the state to so interrogate her. (Tr.Tr. Vol. II: p. 410, l. 24 through p. 413, l. 2). In addition, the Missouri Supreme Court explicitly found that the state had established sufficient hostility to permit the state to interrogate Mrs. Byrd as a hostile witness with leading questions. State v. Byrd, 676 S.W.2d at 503. Because these factual determinations are fairly supported by the record (Tr.Tr. Vol. II, p. 407, l. 16 through p. 410, l. 23), see 28 U.S.C. § 2254(d)(8), and because petitioner has otherwise failed to overcome the presumption of correctness, petitioner has failed to establish any error in the trial court's decision. Further, to the extent there was error, petitioner has failed to show that the error resulted in a denial of due process. Wood v. Lockhart, 809 F.2d 457, 460 (8th Cir.1987).
Second, with respect to impeachment, petitioner is complaining that the trial court permitted the state to impeach Mrs. Byrd, its own witness, by playing a tape recording of a prior statement made by Mrs. Byrd to the police. There is no constitutional bar to a party impeaching its own witness, see Fed.R.Evid. 607, and, in fact, the Constitution requires that a criminal defendant be permitted to impeach his own witnesses. Chambers v. Mississippi, 410 U.S. 284, 298, 93 S.Ct. 1038, 1047, 35 L.Ed.2d 297 (1973). Thus, the trial court's decision to permit the state to impeach its own witness is a mere state law evidentiary ruling. Because federal habeas corpus relief is available only if a person is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), petitioner is entitled to federal habeas corpus relief on the basis of this impeachment ruling only if the ruling was erroneous under state law and resulted in a denial of due process. Wood v. Lockhart, 809 F.2d 457, 459-460 (8th Cir. 1987); Maggitt v. Wyrick, 533 F.2d 383, 385 (8th Cir.), cert. denied, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976).
Under Missouri law in effect at the time of petitioner's trial, for the state to impeach one of its own witnesses at a criminal trial, the witness had to be hostile and (1) "the witness must, by reason of answers which are inconsistent with previous statements, surprise the party propounding the questions," and (2) "the answers as given must state facts which in effect make the witness a witness for the other side." State v. Byrd, 676 S.W.2d at 502, relying upon, State v. Ambruster, 641 S.W.2d 763, 767 (Mo.1982).[16]
Mrs. Byrd testified as follows: petitioner did not tell Mrs. Byrd that he had killed three people in St. Louis to be with her and their baby (Tr.Tr. Vol. II: p. 419, l. 19 through p. 420, l. 13); she did talk to the Police about petitioner (Id. at p. 420, l. 14 through p. 421, l. 5); she did not tell the Police that petitioner had told her that he had killed three people in St. Louis to be with her and their baby (Id. at p. 421, l. 8 through p. 422, l. 14); she might be able to recognize a tape recording of her statement *766 to the police (Id. at p. 422, ll. 18-21). The state then played a tape recording on which Mrs. Byrd stated that petitioner told her that he killed three people in St. Louis to be with her and their baby. (Id. at p. 424, l. 8 through p. 425, l. 7). Mrs. Byrd then testified that it was her voice speaking on the tape, but she didn't say what was on the tape. (Id. at p. 425, ll. 8-19). The trial court ruled that the playing of the tape was proper impeachment by a prior inconsistent statement of Mrs. Byrd's trial testimony that she had not told the Police that petitioner had told her that he had killed three people in St. Louis to be with her and their baby. (Id. at p. 423, l. 23 and p. 426, ll. 18-19). See State v. Byrd, 676 S.W.2d at 502.
The Missouri Supreme Court concluded that the state had satisfied the requirements for impeaching Mrs. Byrd, its own witness, by her prior inconsistent statement. In reaching that conclusion, the Court made the factual determination that Mrs. Byrd's testimony prior to impeachment was "contrary to the prosecutor's legitimate anticipation." 676 S.W.2d at 503. Petitioner takes issue with this factual determination of surprise. This factual determination is entitled to the 28 U.S.C. § 2254(d) presumption of correctness unless it is not fairly supported by the record. See 28 U.S.C. § 2254(d). As petitioner points out, petitioner's trial attorney specifically advised the Court and the state that Mrs. Byrd had previously told the state that she had not made the statement to the Police (Tr.Tr. Vol. II: p. 402, ll. 13-17), and that Mrs. Byrd would now testify that she never made the statement. (Id. at p. 402, ll. 24-25). (See also Tr.Tr. Vol. III: pp. 1027-1030 & pp. 1038-1039 [Sgt. Wedlock]). However, the state legitimately expected Mrs. Byrd to testify truthfully and would not expect Mrs. Byrd to perjure herself by denying that she made the statement to the Police. Thus, it is a close question whether the Missouri Supreme Court's factual determination of surprise is fairly supported by the record. Without definitively deciding the question, the Court will assume for the purposes of this opinion that the state was not surprised when Mrs. Byrd denied making the statement to the Police. If the state was not surprised by Mrs. Byrd's denial, then it was an erroneous evidentiary ruling under Missouri law for the trial court to permit the state to impeach Mrs. Byrd, its own witness, with her prior inconsistent statement. State v. Ambruster, 641 S.W.2d at 767.
As stated above, if the trial court did err under state law, such an erroneous state law evidentiary ruling is grounds for federal habeas corpus relief only if the error resulted in a denial of due process. Wood v. Lockhart, 809 F.2d 457, 459-460 (8th Cir.1987). Petitioner fails to meet this standard. The state's impeachment of its own witness without first being surprised does not of itself raise any due process problems or cause any fundamental unfairness. United States v. Fay, 668 F.2d 375, 379 (8th Cir.1981); United States v. Dennis, 625 F.2d 782, 795 (8th Cir.1980); United States v. Long Soldier, 562 F.2d 601, 605 (8th Cir.1977); Fed.R.Evid. 607. Yet, courts have recognized that, because an unsworn prior inconsistent statement is hearsay inadmissible as substantive evidence, the state's impeachment of its own witness with a prior inconsistent hearsay statement may be a subterfuge by the state to present the inadmissible evidence to the jury as substantive evidence. See United States v. Fay, 668 F.2d at 379; United States v. Long Soldier, 562 F.2d at 605. Such a use of impeachment with a prior inconsistent hearsay statement could be conspicuously prejudicial to a defendant and could cause the trial to be fundamentally unfair.
In the instant case, assuming that the state was not surprised by Mrs. Byrd's testimony, it is possible that the state impeached Mrs. Byrd with her prior inconsistent hearsay statement for the purpose of presenting that statement to the jury as substantive evidence. However, assuming that this was the state's purpose, petitioner cannot show any conspicuous prejudice or fundamental unfairness resulting therefrom because, as the Missouri Supreme Court noted, State v. Byrd, 676 S.W.2d at *767 503, Mrs. Byrd later did affirmatively testify that petitioner had told her that he had killed some people to be with her and their baby in Georgia. (Tr.Tr. Vol. II: p. 702, l. 18 through p. 704, l. 17 and p. 708, ll. 12-20). Mrs. Byrd's later testimony cured any prejudice which might have resulted from the state's prior impeachment of her. Therefore, petitioner has not shown that, if the trial court erred in permitting the state to impeach Mrs. Byrd, its own witness, such error resulted in a denial of due process. Wood v. Lockhart, 809 F.2d at 466.
For the foregoing reasons, petitioner's Amended Petition Habeas Ground J is denied on its merits.

5. Habeas Ground K.

Petitioner contends that he was denied various constitutional rights because the state was permitted to recall Mrs. Byrd as a witness after the state charged her with perjury in order to induce her to change her trial testimony. On direct appeal, the Missouri Supreme Court considered and rejected this argument. State v. Byrd, 676 S.W.2d at 504. The sequence of events at trial underlying this claim is as follows: at trial, on August 11, 1982, Mrs. Byrd testified that petitioner had not told her that he had killed three people in St. Louis and Mrs. Byrd testified that she did not tell the Police that petitioner had told her that he had killed three people in St. Louis (Tr.Tr. Vol. II: p. 419 through p. 422); that night, the state charged Mrs. Byrd with, and arrested her for, perjury based upon her trial testimony earlier in the day; the next day, August 12, 1982, the state recalled Mrs. Byrd and Mrs. Byrd changed her testimony; Mrs. Byrd testified that petitioner had told her that he had killed people to be with her (Id. at 703, ll. 13-20), her testimony on this day was true (Id. at 704, ll. 9-11 & 14-15), and she testified on the previous day as she had because of her love for petitioner and because she was scared. (Id. at 704, ll. 12-13).
The state readily acknowledges, as it must, that it charged Mrs. Byrd with perjury in order to induce her to change her trial testimony. The state contends that this tactic did not deny petitioner any constitutional rights because the perjury charge did not induce Mrs. Byrd to testify falsely on August 12. Rather, the state contends that the perjury charge induced Mrs. Byrd to testify truthfully on August 12 because Mrs. Byrd had testified falselycommitted perjuryon August 11.
First, the determination of whether Mrs. Byrd in fact testified truthfully or falsely on August 12 was wholly within the province of the jury for the jury to decide based upon its assessment of Mrs. Byrd's credibility on that date in light of the differences between her August 11 and 12 testimony, the state's impeachment of her August 11 testimony, petitioner's impeachment of her August 12 testimony, and the circumstances surrounding her August 12 testimony (to wit, the perjury charge, which was disclosed to the jury (Tr.Tr. Vol. III: pp. 702, l. 20, through 703, l. 10, p. 706, ll. 4-13, and p. 708, ll. 3-22)). Therefore, it is impossible for this Court to determine whether Mrs. Byrd in fact testified truthfully or falsely on August 12.
Second, it is well-established that the state cannot knowingly use perjured testimony in order to obtain a defendant's conviction. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942); Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). If the state charged Mrs. Byrd with perjury based upon her August 11 testimony in order to induce her to commit perjury on August 12, then the state would have known that Mrs. Byrd's August 12 testimony was false and the state would have knowingly used perjured testimony (Mrs. Byrd's August 12 testimony) in order to obtain petitioner's conviction. If so, petitioner's conviction cannot stand. However, the Missouri Supreme Court made factual determinations that the state had probable cause to believe that Mrs. Byrd had perjured herself on August 11 by testifying that petitioner had not confessed to her and that the state charged Mrs. Byrd with perjury in order to induce her to testify truthfully on August 12. State v. Byrd, 676 S.W.2d at 504. These factual *768 determinations are entitled to the § 2254(d) presumption of correctness because they are fairly supported by the record. See 28 U.S.C. § 2254(d)(8); Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Thus, whether or not Mrs. Byrd's August 12 testimony was false, based upon the Missouri Supreme Court's factual determinations, this Court must conclude that the state believed that Mrs. Byrd's August 11 testimony was false and that her August 12 testimony was truthful. The Court therefore must conclude that the state did not knowingly use perjured testimony in order to obtain petitioner's conviction.
Third, perjury is anathematic to the criminal trial process. The United States Supreme Court has therefore held: that a criminal defendant's constitutional right to testify does not include the right to testify falsely or to commit perjury, Nix v. Whiteside, 475 U.S. 157, 173, 106 S.Ct. 988, 998, 89 L.Ed.2d 123 (1986), Harris v. New York, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971); that a criminal defendant's attorney "is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law," Nix v. Whiteside, 475 U.S. at 166, 106 S.Ct. at 994; and that the state may introduce otherwise illegally obtained and inadmissible evidence in order to impeach a criminal defendant's false or perjurous testimony. United States v. Havens, 446 U.S. 620, 626-627, 100 S.Ct. 1912, 1916-1917, 64 L.Ed.2d 559 (1980); Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed. 2d 570 (1975). With respect to the testimony of witnesses at criminal trials, courts possess broad contempt powers to ensure that the witnesses do not refuse to answer questions, do not give deliberately evasive answers, and do not otherwise obstruct justice. See Matter of Kitchen, 706 F.2d 1266, 1272, (2nd Cir.1983); In re Weiss, 703 F.2d 653, 665-667 (2nd Cir.1983). The Court may, without violating the criminal defendant's constitutional rights, use its contempt power to induce a witness who has lied in a way which has obstructed justice to change her testimony and to testify truthfully. In re Weiss, 703 F.2d at 662-663; cf. In re Michael, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30 (1945) (a witness who unequivocally perjures himself and does not otherwise obstruct justice is not subject to the court's contempt power). Against this background, the Court concludes that, if the state believes that a witness has committed unequivocal perjury during the course of a criminal trial, the state does not violate the criminal defendant's constitutional rights by charging the witness with perjury in order to induce the witness to change her testimony and to testify truthfully. Because this Court must accept the Missouri Supreme Court's factual determinations and thus must conclude that the state believed that Mrs. Byrd's August 11 testimony was false and perjurous, this Court concludes that it was not an impermissible trial tactic for the state to charge Mrs. Byrd with perjury on the basis of that August 11 testimony in order to induce her to change her testimony and to testify truthfully.
For the foregoing reasons, petitioner's Amended Petition Habeas Ground K is denied on its merits.

6. Habeas Ground L.

Petitioner contends that he was denied various constitutional rights because the trial court allowed his wife, Mrs. Byrd, to testify as a witness against him in derogation of his marital privilege. On direct appeal, the Missouri Supreme Court considered and rejected petitioner's argument. State v. Byrd, 676 S.W.2d at 500-501. Although the marital privilege has "ancient roots" and "medieval origins," Trammel v. United States, 445 U.S. 40, 43 & 44, 100 S.Ct. 906, 908 & 909, 63 L.Ed.2d 186 (1980), the marital privilege is a creation of the common law or of statutes, id. at 48 n. 9, 100 S.Ct. at 911 n. 9, and it is well established that the marital privilege is not a constitutional privilege. Welch v. Butler, 835 F.2d 92, 94 (5th Cir.1988); Port v. Heard, 764 F.2d 423, 430 (5th Cir.1985); United States v. Lefkowitz, 618 F.2d 1313, 1319 (9th Cir.), cert. denied, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980); LaRoche v. Wainwright, 599 F.2d 722, 726 (5th Cir.1979). In Missouri, the marital privilege is a statutory privilege which may *769 be invoked by either the witness spouse or the defendant spouse. Mo.Rev.Stat. § 546.260.[17] Thus, the trial court's decision to permit Mrs. Byrd to testify is a mere state law evidentiary ruling. LaRoche v. Wainwright, 599 F.2d at 726. Because federal habeas corpus relief is authorized and available only if a person is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), petitioner is entitled to federal habeas corpus relief on the basis of the trial court's evidentiary ruling regarding marital privilege only if the ruling was erroneous under state law and resulted in a denial of due process. Wood v. Lockhart, 809 F.2d 457, 459-460 (8th Cir.1987). In order for an erroneous evidentiary ruling to cause a denial of due process, the error must be "so gross," "conspicuously prejudicial," or "otherwise of such magnitude that it fatally infected the trial and failed to afford petitioner the fundamental fairness which is the essence of due process." Maggitt v. Wyrick, 533 F.2d 383, 385 (8th Cir.), cert. denied, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976); Wood v. Lockhart, 809 F.2d 457, 460 (8th Cir.1987); LaRoche v. Wainwright, 599 F.2d 722, 726 (5th Cir.1979) ("fundamental fairness"); see also Welch v. Butler, 835 F.2d 92, 94 (5th Cir.1988) ("In reviewing a habeas petition, ... we may not examine a claim that state law [statutory spousal privilege] required the exclusion of the statements.") Petitioner fails to meet this standard for two reasons.
First, petitioner has failed to show that there was any error in permitting Mrs. Byrd to testify. The trial court decided to permit Mrs. Byrd to testify, despite the claim of marital privilege, because the trial court concluded that, under Georgia law, petitioner was not entitled to assert the privilege with respect to Mrs. Byrd. This conclusion was based upon the trial court's factual determination that, at the time petitioner married Mrs. Byrd, petitioner and his first wife, Evelyn McQueen, who was still living at the time of the second marriage, had not yet divorced. (Tr.Tr. Vol. II: p. 407, ll. 3-6). This factual determination is entitled to the 28 U.S.C. § 2254(d) presumption of correctness because it is fairly supported by the record before the trial court at the time the trial court made its decision. See 28 U.S.C. § 2254(d)(8); (Tr.Tr. Vol. II: p. 397, ll. 16-21 [petitioner married McQueen in 1976], p. 393, l. 25 through p. 394, l. 6, p. 395, ll. 3-6 [petitioner told reporter that he had not ever divorced McQueen], p. 399, ll. 10-11 [McQueen was alive in 1981], p. 403, ll. 23-24, p. 408, ll. 10-16 [petitioner married Saundra Yvonne Byrd in 1978]). The Missouri Supreme Court affirmed the trial court's decision regarding marital privilege. The Missouri Supreme Court concluded that, under Missouri law, petitioner was not entitled to assert the privilege with respect to Mrs. Byrd. This conclusion was based upon a factual determination that petitioner and McQueen had not yet divorced at the time petitioner married Mrs. Byrd. State v. Byrd, 676 S.W.2d at 500-501. This factual determination is also entitled to the 28 U.S. C. § 2254(d) presumption of correctness because it is fairly supported by the record as a whole, see 28 U.S.C. § 2254(d)(8), and specifically including, in addition to the testimony noted above, petitioner's own trial testimony (after Mrs. Byrd had already testified) that he had not ever divorced McQueen and that he did not believe that his second marriage was valid. (Tr.Tr. Vol. III: p. 830, ll. 16-22); State v. Byrd, 676 S.W.2d at 500 n. 2. Because petitioner has failed to overcome the presumption of correctness which attaches to the trial court's and the Missouri Supreme Court's factual determinations that petitioner and McQueen had not yet divorced at the time petitioner married Mrs. Byrd, petitioner has failed to show that there was any error in permitting Mrs. Byrd to testify. Therefore, petitioner has failed to show any denial of due process as a result of that decision. Wood v. Lockhart, 809 F.2d at 460; Maggitt v. Wyrick, 533 F.2d at 385; see *770 Holton v. Newsome, 750 F.2d 1513, 1514 (11th Cir.1985) (federal habeas corpus petitioner failed to show a violation of the marital privilege because he failed to overcome the presumption of correctness which attached to the trial court's determination that the petitioner was not married to his putative common-law wife; therefore, the federal habeas corpus petitioner failed to show that his trial was fundamentally unfair).
Second, assuming arguendo that it was error to permit Mrs. Byrd to testify and recognizing that her testimony "prejudiced" defendant in that her testimony was central to the state's case against petitioner, the Court does not believe that, in due process terms, the admission of her testimony could be a gross error, could be conspicuously prejudicial, or could result in a fundamentally unfair trial, because her testimony was relevant and material, was based upon her personal knowledge, was highly probative of defendant's guilt, was not confusing or misleading, was not merely cumulative evidence, and was not given by reason of a court order ordering her to testify.
For the foregoing reasons, petitioner's Amended Petition Habeas Ground L is denied on its merits.

7. Habeas Ground N.

Petitioner contends that he was denied his right to a fair and impartial trial and his rights to due process because the trial court allowed Lori Robinette to testify after her memory had been enhanced and hardened by hypnosis. On direct appeal, the Missouri Supreme Court considered and rejected petitioner's argument. State v. Byrd, 676 S.W.2d at 504-505.
At trial, Ms. Robinette testified as follows: she arrived at Master Pest Control (the place of business at which both she and petitioner worked) at 7:50 a.m. on October 23, 1980, (Tr.Tr. Vol. II: pp. 572-573); when she arrived at work, petitioner was already there; he was seated in a maroon Vega, which is a car different from the grey Vega in which he usually came to work; there was another person in the car with petitioner, (Tr.Tr. Vol. II: p. 573, l. 20 through p. 574, l. 11); in June of 1981, Ms. Robinette saw that maroon Vega for a second time at a police impoundment lot; at the police impoundment lot, she saw that the maroon Vega bore the license plate "BOOTSIE;" as a result of seeing the license plate "BOOTSIE" on the maroon Vega in the police impoundment lot, she remembered that the maroon Vega in which petitioner was seated on October 23, 1980, also bore the license plate "BOOTSIE." (Tr.Tr. Vol. II: p. 583, l. 19 through p. 584, l. 13; Respondent's Exhibit A, Motion Transcript [hereinafter "M.Tr."] p. 43, ll. 14-25 and p. 45, l. 18 through p. 46, l. 12). Approximately one week later, the Police had Ms. Robinette hypnotized. (M.Tr. p. 42, ll. 9-15).
As both the United States Supreme Court and the United States Court of Appeals for the Eighth Circuit have noted, "[t]hree general characteristics of hypnosis can lead to the introduction of inaccurate memories," Rock v. Arkansas, ___ U.S. ___, 107 S.Ct. 2704, 2713, 97 L.Ed.2d 37 (1987): "confabulation," "suggestion," and "memory-hardening." Id.; Little v. Armontrout, 835 F.2d 1240, 1244 (8th Cir. en banc 1987), cert. filed, (Mar. 15, 1988). "Confabulation" is the process by which the hypnosis subject unconsciously uses her imagination to fill in details or gaps in her memory in order to make her recall more coherent and complete. 107 S.Ct. at 2713; 835 F.2d at 1244. As a result of the "confabulation," the hypnosis subject adds information and then "cannot distinguish between the true and imagined memories." 835 F.2d at 1244. "Suggestion" is the process by which the hypnosis subject answers questions in the way the subject believes the hypnotist wants, which answers may not be factually correct. 107 S.Ct. at 2713; 835 F.2d at 1244. "Memory-hardening" is the process by which the hypnosis subject now has greater "confidence in both true and false memories, [thus] making effective cross-examination more difficult." 107 S.Ct. at 2713; 835 F.2d at 1244.
However, despite these acknowledged problems with hypnosis, neither the United States Supreme Court nor the United State *771 Court of Appeals for the Eighth Circuit has yet held that a state is barred from introducing hypnotically enhanced testimony against a criminal defendant. Rock v. Arkansas, ___ U.S. ___, 107 S.Ct. 2704, 2712 n. 15, 97 L.Ed.2d 37 (1987); Little v. Armontrout, 835 F.2d 1240, 1243 & n. 5 (8th Cir. en banc 1987), cert. filed, (Mar. 15, 1988). In Rock, the Supreme Court held that states may not exclude, on a per se basis, all hypnotically enhanced testimony offered by criminal defendants. 107 S.Ct. at 2714. In Little, the key evidence against the defendant was the victim's identification of the defendant. 835 F.2d at 1241. Yet, the victim identified the defendant only after being hypnotized. Id. at 1240-1241. In this circumstance, the Eighth Circuit, en banc, held that "the denial of a state-provided expert on hypnosis to assist this indigent defendant rendered the trial fundamentally unfair and require[d] that the conviction be set aside." 835 F.2d at 1243. The Eighth Circuit expressly declined to reach the broader question of when and under what circumstances hypnotically enhanced testimony is inadmissible. Id.[18]
Under Missouri law in effect at the time of petitioner's trial, the trial court did not err in permitting Ms. Robinette to testify even though she had been hypnotized prior to the trial. Further, there is no per se constitutional rule barring a witness from testifying solely because she has been hypnotized prior to her trial testimony such that her memory may now be hardened. Rock v. Arkansas, ___ U.S. ___, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); Little v. Armontrout, 835 F.2d 1240 (8th Cir. en banc 1987), cert. filed, (Mar. 15, 1988). The Court concludes therefore that petitioner is entitled to federal habeas corpus relief on the basis of the admission of Ms. Robinette's testimony only if petitioner can show that admission of her testimony "violates a specific federal constitutional provision, ... and the error is of such magnitude as to deny fundamental fairness to the criminal trial." Warden v. Wyrick, 770 F.2d 112, 116 (8th Cir.), cert. denied, 474 U.S. 1035, 106 S.Ct. 600, 88 L.Ed.2d 579 (1985). In making this determination, the Court reviews the totality of the facts in the case. Maggitt v. Wyrick, 533 F.2d 383, 385 (8th Cir.), cert. denied, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976).
Petitioner contends that, as a result of the hypnosis session, Ms. Robinette's belief that she saw the license plate "BOOTSIE" on the maroon Vega on October 23, 1980, was enhanced and hardened. Petitioner contends that Ms. Robinette's testimony in that regard is significant because it connects to James Marion Mydell's testimony that, although petitioner did not implicate anybody else in the Pope's Cafeteria murders, petitioner did mention a "guy named Bootsie" as the person who drove petitioner's motorcycle to Georgia. (Tr.Tr. Vol. II: p. 677, l. 13 through p. 678, l. 21).
First, Mydell did testify that petitioner told him that "a guy named Bootsie" drove petitioner's motorcycle to Georgia. (Tr.Tr. Vol. II: p. 677, l. 13 through p. 678, l. 21). However, both petitioner and Mrs. Byrd also testified to that fact. (Tr.Tr. Vol. III: p. 806, ll. 23-26 [petitioner]; Tr.Tr. Vol. II: p. 415, ll. 7-15 and p. 416, ll. 12-17 [Mrs. Byrd]). Thus, the fact that a guy named "Bootsie" drove petitioner's motorcycle to Georgia is not in dispute.
Second, Ms. Robinette's testimony as it relates to her seeing petitioner at around 7:50 a.m. on October 23, 1980, contains only four significant facts: (i) when Ms. Robinette arrived at Master Pest Control at 7:50 a.m., petitioner was already there, (ii) petitioner was seated in a maroon Vega, which is a car different from the grey Vega in *772 which he usually came to work, (iii) there was another person in the car with petitioner, and (iv) the maroon Vega bore the license plate "BOOTSIE." Petitioner himself corroborated the first of these facts by his trial testimony. (Tr.Tr. Vol. II: p. 794, ll. 17-22). Further, there is no dispute but that Ms. Robinette unequivocally reported the first three of these facts to the Police before seeing the maroon Vega in the police impoundment lot and before the hypnosis. Thus, any problems with the admission of Ms. Robinette's testimony after the hypnosis relate only to the fourth of these facts, namely Ms. Robinette's testimony that she saw the license plate "BOOTSIE" on the maroon Vega on October 23, 1980.
Third, the major point of conflict between petitioner's testimony and Ms. Robinette's testimony is: petitioner's testimony that he arrived at work by himself in his silver/grey Vega on October 23, 1980, (Tr.Tr. Vol. II: p. 794, l. 23 through p. 795, l. 18), and Ms. Robinette's testimony that when she arrived at work petitioner was already there and was seated, together with another person in a maroon Vega. (Tr.Tr. Vol. II: p. 573, l. 20 through p. 574, l. 11).
Fourth, the Missouri Supreme Court noted that Ms. Robinette testified that her viewing of the maroon Vega in the police impoundment lot in June, 1981, caused her to remember that the maroon Vega in which petitioner was seated on October 23, 1980, bore the license plate "BOOTSIE." State v. Byrd, 676 S.W.2d at 504. The Missouri Supreme Court then made a factual determination that Ms. Robinette did not remember any additional details about the maroon Vega as a result of the hypnosis session and that the hypnosis session did not suggest any additional information to Ms. Robinette. Id. at 505. This factual determination is entitled to the § 2254(d) presumption of correctness because it is fairly supported by the record as a whole. Based upon this factual determination, this Court concludes that Ms. Robinette's testimony does not present any "confabulation" or "suggestion" problems because Ms. Robinette remembered that the maroon Vega that she saw on October 23, 1980, bore the license plate "BOOTSIE" before she underwent hypnosis. However, the Missouri Supreme Court did not make any factual determinations regarding petitioner's contention that Ms. Robinette's belief that she saw the license plate "BOOTSIE" on October 23, 1980, was enhanced and hardened by the hypnosis session. Thus, for the purposes of petitioner's Habeas Ground N, this Court accepts arguendo petitioner's contention that the hypnosis session may have enhanced or hardened Ms. Robinette's belief that she saw the license plate "BOOTSIE" on October 23, 1980. Thus, petitioner's Habeas Ground N presents a "memory-hardening" problem: Ms. Robinette's belief that she saw the license plate "BOOTSIE" on October 23, 1980, may have hardened as a result of her hypnosis in June, 1981.
Upon reviewing the totality of the inculpatory evidence against petitioner, see supra footnote 14, and upon reviewing the totality of Ms. Robinette's testimony, and considering: (1) the portion thereof which petitioner corroborates (her first fact) and the portions thereof which Ms. Robinette unequivocally reported before her viewing of the maroon Vega in the police impoundment lot and before her hypnosis (first three facts), and (2) that the major point of conflict between petitioner's testimony and Ms. Robinette's testimony is: petitioner's testimony that he arrived at work on October 23, 1980, alone in his silver/grey Vega and Ms. Robinette's testimony that, when she arrived at work, petitioner was already there together with another person in a maroon Vega, and (3) that petitioner does not claim that the purported "memory-hardening" affects Ms. Robinette's testimony on this major point of conflict, the Court concludes that Ms. Robinette's testimony that the maroon Vega which she saw on October 23, 1980, bore the license plate "BOOTSIE" has only very marginal inculpatory significance. Likewise, because it is undisputed that a guy named "Bootsie" drove petitioner's motorcycle to Georgia, the connection between Ms. Robinette's testimony and Mydell's testimony has only very marginal inculpatory significance.
*773 Accordingly, the Court concludes that, accepting arguendo that Ms. Robinette's belief that she saw the license plate "BOOTSIE" on October 23, 1980, may have hardened as a result of the hypnosis session in June, 1981, in light of the totality of the inculpatory evidence against petitioner, see supra footnote 14, petitioner has failed to establish his entitlement to federal habeas corpus relief on the basis of the admission of Ms. Robinette's testimony after she had been hypnotized. Petitioner simply has failed to establish that any error resulting from the admission of Ms. Robinette's testimony after she had been hypnotized was an error "of such magnitude as to deny fundamental fairness to the criminal trial." Warden v. Wyrick, 770 F.2d 112, 116 (8th Cir.), cert. denied, 474 U.S. 1035, 106 S.Ct. 600, 88 L.Ed.2d 579 (1985). In addition, because of the marginal inculpatory significance of Ms. Robinette's testimony regarding the license plate "BOOTSIE" and because of the marginal inculpatory significance of the connection between Ms. Robinette's testimony and Mydell's testimony, the Court concludes that due process did not require that the state provide an expert on hypnosis to petitioner. See Little v. Armontrout, 835 F.2d 1240, 1243-1244 (8th Cir. en banc 1987), cert. filed, (Mar. 15, 1988). Finally, because Ms. Robinette's testimony regarding the license plate "BOOTSIE" had only marginal significance, any reduction in petitioner's ability to cross-examine Ms. Robinette effectively on that point because of her purported "memory-hardening" caused by the hypnosis did not deny petitioner his right of confrontation or his rights to due process, and did not cause the trial to be unfair.
For the foregoing reasons, petitioner's Amended Petition Habeas Ground N is denied on its merits.

8. Habeas Ground O.

Petitioner contends that he was denied various constitutional rights because, during the sentencing phase of the trial, the trial court ruled that if petitioner introduced evidence that he received a good citizenship award nomination in 1980, then the court would permit the state to introduce evidence that petitioner had been arrested for a separate alleged robbery and murder in Georgia which occurred subsequent to the Pope's Cafeteria murders. On direct appeal, the Missouri Supreme Court considered and rejected petitioner's argument. State v. Byrd, 676 S.W.2d at 505.
The transcript of the sentencing phase of the trial reflects that the following occurred: petitioner's trial counsel made an offer of proof that a member of the Grand Jury Association of St. Louis (Mr. Coble) would testify that in September, 1980, the Association received a nomination for a good citizenship award for petitioner based upon petitioner's part in a burglary investigation, (Tr.Tr. Vol. III: pp. 967-968); the state responded that if petitioner introduced such evidence, then it would seek to cross-examine Coble about the Association's knowledge of petitioner's reputation, and specifically would cross-examine Coble to determine whether the Association knew about petitioner's arrest in Georgia for the robbery and homicide which occurred subsequent to the Pope's Cafeteria murders, (Id. at p. 968, l. 23 through p. 969, l. 6); the trial court ruled that petitioner's evidence opened up the issue of petitioner's character and thus the state would be permitted its proposed rebuttal cross-examination, (Id. at p. 969, ll. 7-11); petitioner's trial counsel then pointed out that the robbery and murder arrest occurred subsequent to the nomination, (Id. at p. 969, l. 21 through p. 970, l. 2); the state then responded that it would seek to cross-examine Coble about petitioner's arrests which predated the nomination, (Id. at p. 970, ll. 6-9); the trial court then ruled that the prosecutor would be allowed to rebut by cross-examination with this evidence. (Id. at p. 970, ll. 10-12). Petitioner then declined to present the testimony of Coble. (Id. at pp. 972-1046 [petitioner's evidence during the sentencing phase of the trial]).
First, in Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), the Supreme Court stated that the sentencer in a capital case cannot "`be precluded from considering, as a mitigating factor, any aspect of a defendant's *774 character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death'." 455 U.S. at 110, 102 S.Ct. at 874 (quoting Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (plurality opinion)) (emphasis in Lockett). Petitioner argues that the trial court's ruling with regard to the proposed testimony of Coble violated the Eddings-Lockett rule that the sentencer not be precluded from considering as mitigating evidence any relevant evidence which the defendant proffers. However, petitioner's argument mischaracterizes the trial court's ruling. The trial court did not rule that petitioner could not present Coble's testimony. Rather, the trial court ruled that if petitioner did present Coble's testimony, then the state would be permitted to cross-examine Coble. (Tr.Tr. Vol. III: p. 969, ll. 7-11 and p. 970, ll. 10-12). Thereafter, petitioner chose not to present the testimony of Coble. Petitioner chose not to present his mitigating evidence. Thus, the trial court's ruling did not violate the Eddings-Lockett rule. See Eddings, 455 U.S. at 110-116, 102 S.Ct. at 874-878; Lockett, 438 U.S. at 604-608, 98 S.Ct. at 2964-2967; see also Hitchcock v. Dugger, ___ U.S. ___, 107 S.Ct. 1821, 1824, 95 L.Ed.2d 347 (1987); Skipper v. South Carolina, 476 U.S. 1, 4-8, 106 S.Ct. 1669, 1670-1673, 90 L.Ed.2d 1 (1986).
Second, the trial court made the factual determination that petitioner's proffered mitigating evidence constituted character evidence. (Tr.Tr. Vol. III: p. 969, ll. 7-11). Likewise, the Missouri Supreme Court made the same factual determination. State v. Byrd, 676 S.W.2d at 505. Petitioner takes issue with these factual determinations and contends that Coble's testimony merely would have established a prior good act of petitioner, and thus was not character evidence. However, as the Missouri Supreme Court noted, because Coble's proffered testimony was based upon the nomination for a good citizenship award, "[t]he witness' testimony would have shown more than a previous instance of good conduct. It would have shown the [Grand Jury Association's] opinion of [petitioner's] `good citizenship' in light of that conduct." State v. Byrd, 676 S.W.2d at 505. The Court therefore concludes that the trial court's and the Missouri Supreme Court's factual determinations that petitioner's proffered mitigating evidence constituted character evidence are fairly supported by the record. Thus, these factual determinations are entitled to the § 2254(d) presumption of correctness. Given that petitioner's proffered mitigating evidence constituted character evidence, under Missouri law the trial court could decide to permit the state to cross-examine Coble regarding petitioner's arrests which occurred prior to the date of the Grand Jury Association good citizenship award nomination. State v. Byrd, 676 S.W.2d at 505, citing, State v. Smith, 655 S.W.2d 745, 749 (Mo.App.1983). Although it might have been error to permit the state to cross-examine Coble about the robbery and murder arrest in Georgia which occurred subsequent to the nomination, see State v. Smith, 655 S.W.2d at 749, the trial court did not err in ruling that the state could be permitted to cross-examine Coble regarding petitioner's arrests which occurred prior to the nomination. (See Tr.Tr. Vol. III: p. 969, l. 21 through p. 970, l. 2; p. 970, ll. 6-9; p. 970, ll. 10-12). The Court concludes that the trial court's ruling that if petitioner presented Coble's testimony then the state would be permitted to cross-examine Coble regarding petitioner's arrests prior to the nomination did not deny petitioner of any constitutional rights.
For the foregoing reasons, petitioner's Amended Petition Habeas Ground O is denied on its merits.

9. Habeas Ground P.

Petitioner contends that he was denied his right to a fair and impartial trial and his rights to due process and equal protection because the trial court permitted the state to use non-admitted evidence during its closing argument. Specifically, during its closing argument, the state played the tape recording of Mrs. Byrd's statement to the Police. During the trial, the state had played this tape recording purportedly to impeach Mrs. Byrd's August 11 trial testimony. (See Tr.Tr. Vol. II: p. 419, l. 19 *775 through p. 426, l. 19; see also Section V.A.4 above). Petitioner contends that during the closing argument the state impermissibly used the tape recording (which was purportedly impeachment evidence) as direct substantive evidence. The Missouri Supreme Court considered and rejected petitioner's argument. State v. Byrd, 676 S.W.2d at 503-504.
The state ended the first portion of its closing argument by arguing that, based upon the tape recording of Mrs. Byrd's statement to the Police, the jury should disbelieve Mrs. Byrd's August 11 testimony because Mrs. Byrd committed perjury on August 11. (Tr.Tr. Vol. III: p. 915, l. 12 through p. 916, l. 12). During petitioner's closing argument, petitioner's trial counsel's first argument to the jury was: that the jury should not believe Mrs. Byrd's August 12 testimony that petitioner had confessed to her, that the jury should not believe the tape recording of Mrs. Byrd's statement to the Police because that statement was coerced, and that Mrs. Byrd testified as she did on August 12 in order to avoid a perjury conviction and not because her August 12 testimony was truthful. (Id. at p. 919, l. 14 through p. 921, l. 14). In the rebuttal portion of the state's closing argument, the state rejoined that Mrs. Byrd had committed perjury on August 11, that she told the truth on August 12, and that she would not have lied on August 12 to avoid going to jail herself when the result would be "to put her husband in the gas chamber." (Id. at p. 948, l. 18 through p. 949, l. 8). The state proceeded to argue that the tape recording of Mrs. Byrd's statement to the Police demonstrated that she lied on August 11. (Id. at p. 950, ll. 5-19). The state then played a portion of the tape recording. (Id. at p. 950, l. 20 through p. 951, l. 14). Thereafter, the state argued that the tape recording did not sound coerced and that Mrs. Byrd's testified truthfully on August 12. (Id. at p. 951, l. 15 through p. 952, l. 10).
In Section V.A.4 above, the Court assumed that the trial court erred under state law in permitting the state to impeach Mrs. Byrd with the tape recording of her statement to the Police (but that any such error did not deprive petitioner of any constitutional rights because Mrs. Byrd later did affirmatively testify consistently with the tape recording). If the trial court did so err, then it follows that it also was error under state law for the state to refer to the tape recording and to play the tape recording during its closing argument. However, because federal habeas corpus relief is authorized and available only if a person is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), petitioner is entitled to federal habeas corpus relief on the basis of the state's use of the tape recording during its closing argument only if the state's actions resulted in a denial of due process. Wood v. Lockhart, 809 F.2d 457, 459-460 (8th Cir.1987); Maggitt v. Wyrick, 533 F.2d 383, 385 (8th Cir.), cert. denied, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976). Petitioner has failed to establish such a denial of due process.
First, Mrs. Byrd affirmatively testified at trial to substantially the same facts as the facts contained in her tape recorded statement to the Police. The Court therefore concludes that the state's use of the tape recorded statement during its closing argument did not deny petitioner's of his due process or other constitutional rights.
Second, the Missouri Supreme Court made the factual determination that the prosecutor used the tape recording during the rebuttal portion of his closing argument in order to rebut petitioner's arguments that Mrs. Byrd's statement to the Police had been coerced and that the state's perjury charge against Mrs. Byrd was unfair and unwarranted. State v. Byrd, 676 S.W.2d at 503-504. This factual determination is entitled to the § 2254(d) presumption of correctness because it is fairly supported by the record. Except for the state's reference to the tape recording during the first portion of its closing argument, and as the Missouri Supreme Court concluded, id, at 504, the state used the tape recording during its closing argument for independent purposes: to show that Mrs. Byrd's statement to the Police was not coerced and to explain the perjury *776 charge against Mrs. Byrd. The Court therefore concludes that, even if it was error for the state to use the tape recording during the rebuttal portion of its closing argument because it was error for the trial court to permit the state to impeach Mrs. Byrd with the tape recording during the course of the trial in the first place, such error in the state's use of the tape recording during the rebuttal portion of its closing argument did not deny petitioner his due process or other constitutional rights because the state used the evidence for independent purposes and not as direct substantive evidence.
Third, with respect to the state's reference to the tape recording during the first portion of its closing argument, the state made the argument that, based upon the tape recording, the jury should disbelieve Mrs. Byrd's August 11 testimony. (Tr.Tr. Vol. III: p. 915, l. 12 through p. 916, l. 12). By this argument, the state clearly used the tape recording as impeachment evidence. Moreover, on August 12, Mrs. Byrd herself in substance testified that the jury should not believe her August 11 testimony. The Court therefore concludes that the state's reference to the tape recording during the first portion of its closing argument did not deny petitioner his due process or other constitutional rights.
For the foregoing reasons, petitioner's Amended Petition Habeas Ground P is denied on its merits.

10. Habeas Ground S.

Petitioner contends that he was denied his Fifth, Sixth, Eighth, and Fourteenth Amendment rights because the prosecutor struck all four black veniremen from the jury panel. Petitioner is black. On post-conviction Rule 27.26 collateral review, the Missouri Court of Appeals considered and rejected petitioner's argument. Byrd v. State, 723 S.W.2d at 42. In Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), the United States Supreme Court held that the Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), decision does not apply retroactively on collateral review of convictions that became final before the Supreme Court announced the decision in Batson (April 30, 1986). Petitioner's conviction became final on February 19, 1985, when the Supreme Court denied certiorari on petitioner's direct appeal. State v. Byrd, 676 S.W.2d 494 (Mo. banc 1984), cert. denied, 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985). Therefore, Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), and not Batson v. Kentucky, applies in petitioner's case. Petitioner's Habeas Ground S thus fails for two interrelated reasons.
First, his Habeas Ground S is phrased as a Batson challenge and Batson does not apply. Second, under Swain, petitioner must prove that the prosecutor had engaged in a pattern of challenging black jurors in a series of cases, 380 U.S. at 223-224, and petitioner will not prevail merely by proving that the prosecutor struck all four black jurors from the jury panel. Thus, because petitioner's Habeas Ground S merely claims that the prosecutor struck all four black veniremen from the jury panel, and does not claim that the prosecutor had engaged in a pattern of challenging black jurors in a series of cases, petitioner's Habeas Ground S is without merit. Swain v. Alabama, 380 U.S. at 223-224, 85 S.Ct. at 837-838.
Petitioner does now seek discovery of statistical evidence to establish a Swain challenge. (Petitioner's Motion for Discovery, Exhibit B, Request for Production of Documents and Things, Items 5(e) and 5(f) & Items 6(a) through 6(g)). Further, petitioner does now claim that he could, after such discovery, establish a Swain challenge. (Petitioner's Supplemental Reply to Respondent's Supplemental Response at 9). However, petitioner did not raise a Swain challenge in state court and petitioner did not seek such discovery designed to prove a Swain challenge in state court. (Petitioner's Point IV of his Rule 27.26 Motion in the Missouri Court of Appeals, like his Habeas Ground S herein, was a Batson challenge, not a Swain challenge). Because petitioner cannot now return to state court to raise a Swain challenge (or to obtain Swain discovery), petitioner *777 has exhausted his state remedies with respect to the Swain challenge, but is subject to procedural default. (See Section III above). Petitioner is thus required to establish Wainwright v. Sykes "cause" and "actual prejudice" before being permitted to raise a Swain challenge (and thus before being permitted to obtain Swain discovery) in this federal habeas corpus proceeding.
Petitioner has presented no reasons whatsoever for his failure to raise a Swain challenge in his Rule 27.26 motion. Further, it is clear that, at the time he filed his Rule 27.26 motion, petitioner knew that the prosecutor at his trial had struck all four black veniremen from the jury panel. Finally, the mere fact that petitioner's Rule 27.26 motion was drafted and filed pro se does not in and of itself constitute "cause" for failure to include a Swain challenge therein. Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir.1988). Based upon the foregoing, the Court concludes that petitioner has failed to establish "cause" for his failure to include a Swain challenge in his Rule 27.26 motion. Further, because petitioner failed to seek Swain discovery in Missouri state court, petitioner has failed to establish a factual basis for his Swain challenge, and thus has failed to establish "actual prejudice" under Swain due to the fact that the prosecutor struck all four black veniremen from the jury panel.
For the foregoing reasons, petitioner's Amended Petition Habeas Ground S is denied on its merits to the extent this Habeas Ground is a Batson challenge and is denied on the basis of procedural default to the extent this Habeas Ground is a Swain challenge.

B. Habeas Grounds A, C, and F.
Petitioner's Habeas Grounds A, C, and F are ineffective assistance of trial counsel claims. First, under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a federal habeas corpus petitioner claiming ineffective assistance of his trial counsel must prove two independent components:
First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.
To establish the first prong of the Strickland test, the federal habeas corpus petitioner must establish that "his counsel's representation fell below an objective standard of reasonableness and was outside the wide range of professionally competent assistance" under the circumstances. Fink v. Lockhart, 823 F.2d 204, 205 (8th Cir.1987); see Wright v. State of Minnesota, 833 F.2d 746, 749 (8th Cir. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1481, 99 L.Ed.2d 709 (1988). In making this evaluation, this Court must "indulge a strong presumption that [trial] counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, 104 S.Ct. at 2065, and the federal habeas corpus petitioner "must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy'." Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). Further, so long as trial counsel's strategic trial tactic decisions are supported by reasonable professional judgment, then the criminal defendant did not receive ineffective assistance of trial counsel, even if hindsight indicates that the strategic decisions were mistakes. Burger v. Kemp, ___ U.S. ___, 107 S.Ct. 3114, 3125-3126, 97 L.Ed.2d 638 (1987); Strickland, 466 U.S. at 690-691, 104 S.Ct. at 2066-2067.
*778 If the federal habeas corpus petitioner does establish that his trial counsel committed errors such that the counsel's representation fell below an objective standard of reasonable professional conduct, then the Strickland analysis shifts to its second prong: whether the federal habeas corpus petitioner has established prejudice resulting from his trial counsel's unprofessional errors. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. To establish such Strickland prejudice, the federal habeas corpus petitioner:
must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
Second, "an ineffective assistance of counsel claim presents a mixed question of law and fact." Kellogg v. Scurr, 741 F.2d 1099, 1101 (8th Cir.1984). The ultimate conclusion as to whether the federal habeas corpus petitioner's counsel "rendered effective assistance is not a finding of fact" entitled to the § 2254(d) presumption of correctness because "[i]neffectiveness is not a question of `basic, primary, or historical fact'." Strickland, 466 U.S. at 698, 104 S.Ct. at 2070 (quoting Townsend v. Sain, 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963)). The § 2254(d) presumption of correctness therefore attaches only to the "state court findings of fact made in the course of deciding an ineffectiveness claim." Strickland, 466 U.S. at 698, 104 S.Ct. at 2070. The presumption of correctness "applies only to the historical facts underlying the attorney's performance but not to the ultimate conclusion as to whether or not effective assistance has been rendered." Kellogg, 741 F.2d at 1101. Accord Kimmelman v. Morrison, 477 U.S. 365, 388-389, 106 S.Ct. 2574, 2590-2591, 91 L.Ed.2d 305 (1986).
Third, the federal habeas corpus petitioner must "fairly present" all of his federal habeas corpus claims to the state courts and "`a federal claim is not "fairly presented" to the state courts when factual allegations significantly affecting the determination of a claim are raised for the first time in federal court'." Davis v. Wyrick, 766 F.2d 1197, 1205 (8th Cir.1985), cert. denied, 475 U.S. 1020, 106 S.Ct. 1209, 89 L.Ed.2d 322 (1986) (quoting Stranghoener v. Black, 720 F.2d 1005, 1007 (8th Cir.1983) (per curiam)); see Sampson v. Love, 782 F.2d 53, 55 (6th Cir.), cert. denied, 479 U.S. 844, 107 S.Ct. 159, 93 L.Ed. 2d 98 (1986). Thus, if the federal habeas corpus petitioner relies upon facts to support his federal habeas corpus claims which present those claims in a "significantly different and in a stronger evidentiary posture" than when the state courts considered those claims, Sampson, 782 F.2d at 55, then, unless the federal habeas corpus respondent (the state) waives the exhaustion requirement and/or waives the federal habeas habeas corpus petitioner's procedural defaults, before the federal court considers those claims in their expanded forms with their additional factual allegations, the state courts must be given an opportunity to consider those claims in their expanded forms (if there exist any state court procedures by which the federal habeas corpus petitioner can still present those claims in their expanded forms to the state courts). Sampson, 782 F.2d at 55-58; Davis, 766 F.2d at 1205; Stranghoener, 720 F.2d at 1007-1008. If there do not exist any such state court procedures, then the federal habeas corpus petitioner must establish Wainwright v. Sykes "cause" and "actual prejudice" before being permitted to present those claims in their expanded forms in the federal habeas corpus proceeding.
With these principles in mind, the Court will consider petitioner's Habeas Grounds A, C, and F.

1. Habeas Ground A.

Petitioner contends that he received ineffective assistance of trial counsel, first, because petitioner's trial counsel called Oscar Ford as a witness, and, second, because the ineffectiveness of that decision was compounded by the fact that Ford had undergone *779 hypnosis prior to his trial testimony. The first of these points was raised in petitioner's Rule 27.26 motion and was considered and rejected by the Missouri Court of Appeals. Byrd v. State, 723 F.2d at 38-41. With respect to the second of these points, respondents have waived the exhaustion requirement and have waived petitioner's procedural default. (See Section II above).
a. When the state rested its case against petitioner, the state's evidence inculpating petitioner in the Pope's Cafeteria murders included the material described in footnote 14 in Section IV.C.l. above (Habeas Ground D). As the Missouri Court of Appeals noted, Byrd v. State, 723 S.W.2d at 41, at the close of the state's case, petitioner's trial counsel had three possible strategies which he could pursue in order to acquit petitioner. First, trial counsel could offer no evidence and simply attack the sufficiency of the state's case in order to attempt to create a reasonable doubt.
Second, trial counsel could call petitioner to testify that he was innocent. Petitioner would testify to his whereabouts at the time of the murders so that his testimony would be consistent with Lori Robinette's testimony that he was at work by 7:50 a.m. Petitioner would also testify in order to account for the large amount of cash that he had when he arrived in Georgia: he would testify that he saved some money and that he stole a bank bag full of cash from a car parked in a shopping mall parking lot.
Third, trial counsel could present the testimony of Faraby Lombardo. Ms. Lombardo, who was 12 years old at the time of the murders, would testify as follows: Between 8:00 a.m. and 8:12 a.m. on the morning of the murders she saw three men in a yellow car stop about two miles north of the West County Shopping Mall; a black man got out of the car and placed a plastic trash bag in the trunk of the car. The significance of Ms. Lombardo's testimony arises from the fact of the specific time that she saw the car and men. Ms. Robinette testified that petitioner was already at work by 7:50 a.m., and that petitioner remained at work until at least 8:00 a.m. (This work location was about ten miles from where Ms. Lombardo saw the three men in the yellow car.) If the three men seen by Ms. Lombardo were the Pope's Cafeteria murderers, then petitioner could not be one of the murderers because, as Ms. Robinette testified, petitioner was at work from at least 7:50 a.m. to 8:00 a.m., ten miles away from where Ms. Lombardo saw the three men in the yellow car between 8:00 a.m. and 8:12 a.m.
In order to establish that the three men whom Ms. Lombardo saw were the murderers, trial counsel had to establish the significance of the fact that the three men seen by Ms. Lombardo were in a yellow car, that at least one of the men was black, and that the black man placed a plastic trash bag in the trunk of the car. In this regard, trial counsel knew that Oscar Ford was on the parking lot of the West County Shopping Mall at the time of the murders. Trial counsel knew that Ford would testify that he saw three black men, one of whom carried a plastic trash bag, leave the parking lot in a yellow car.
Trial counsel also knew that presenting the testimony of Ford carried with it a certain risk: in addition to testifying that the three men left in a yellow car, Ford would also identify petitioner as one of the three men leaving in the yellow car. Further, Ford had been hypnotized by the police so that the certainty of his identification of petitioner might now be stronger. Moreover, Ford would present the sole direct evidence linking petitioner to the murders. However, balanced against this risk, trial counsel also knew that Ford's identification of petitioner was subject to strong impeachment because, after the murders, Ford (after being held in police custody for two days and after being continuously interrogated for those two days) identified three persons, not including petitioner, as the three men whom he saw leaving in the yellow car. In addition, not only would trial counsel be able to impeach Ford's trial identification of petitioner with Ford's prior failure to identify petitioner, but trial counsel would also be able to induce Ford to *780 testify affirmatively that, at the time of the murders, he had identified three black men as the men who left in the yellow car and that he had not identified petitioner as one of those three black men. Thus, Ford's testimony potentially also represented direct exculpatory evidence.
b. It is with this review of petitioner's trial counsel's strategic options at the close of the state's case in mind that this Court now turns to consider petitioner's Habeas Ground A claim that he received ineffective assistance of trial counsel because his trial counsel called Oscar Ford to testify.
First, the Missouri Court of Appeals made factual determinations: that trial counsel decided to call Ford as a witness in order to establish that three black men left the scene of the murders in a yellow car and that one of the men carried a plastic trash bag, and that trial counsel made the decision to call Ford to establish those facts (three black men, yellow car, plastic trash bag) in order to make Ms. Lombardo's testimony (three men, at least one black, yellow car, plastic trash bag, 8:00 a.m. to 8:12 a.m.) relevant, meaningful, and exculpatory when viewed in connection with Ms. Robinette's testimony (petitioner at work between 7:50 a.m. and 8:00 a.m. about ten miles from Ms. Lombardo's location). Byrd v. State, 723 S.W.2d at 39-41. These factual determinations are fairly supported by the record. The Court's own review of the record convinces the Court that these are the reasons trial counsel called Ford to testify and petitioner does not contest that these are the reasons. Therefore, these factual determinations are entitled to the § 2254(d) presumption of correctness. Strickland, 466 U.S. at 698, 104 S.Ct. at 2070; Kellogg, 741 F.2d at 1101.
Second, in Petitioner's Reply to Respondent's Response, petitioner for the first time asserts that, because petitioner's trial counsel could have established a yellow car with black men in it leaving the scene of the murders by means of the testimony of at least four other persons who had given that information to the police, petitioner's trial counsel's decision to call Ford to testify rendered trial counsel's representation ineffective. (See Petitioner's Reply to Respondent's Response at pp. 16-17, p. 17 n. 1, & p. 19, and Petitioner's Exhibit 1 to Petitioner's Reply). Respondents object that petitioner did not present this factual basis for his ineffective assistance of trial counsel claim to the Missouri courts. (Respondent's Supplemental Response at pp. 2-3). This Court agrees.
As noted above, a federal habeas corpus petitioner must "fairly present" to the state courts all of the significant factual allegations underlying and supporting each of his ineffective assistance of trial counsel claims. Sampson, 782 F.2d at 55; Davis, 766 F.2d at 1205; Stranghoener, 720 F.2d at 1007. Petitioner has not done this for his factual allegation that his trial counsel could have established the fact of the yellow car with black men, and thus could have established the exculpatory link between Ms. Lombardo's testimony and Ms. Robinette's testimony, without calling Ford. Further, this additional factual allegation presents petitioner's claim that his trial counsel's decision to call Ford rendered trial counsel's representation ineffective in a "significantly different and in a stronger evidentiary posture" than when the Missouri state courts considered that claim, Sampson, 782 F.2d at 55, and this additional factual allegation would "`significantly affect[] the determination of that claim'." Davis, 766 F.2d at 1205 (quoting Stranghoener, 720 F.2d at 1007). However, petitioner cannot now return to state court to file a successive post-conviction challenge to his conviction to present to a Missouri court his ineffective assistance of counsel claim in its expanded form with this additional factual allegation. See Mo.R.Crim.P. 29.15 & Section III.A. above. Therefore, petitioner must now establish Wainwright v. Sykes "cause" and "actual prejudice" before being permitted to present in this federal habeas corpus proceeding his claim that, because his trial counsel could have established the fact of the yellow car with black men without calling Ford as a witness, his trial counsel's decision to call Ford rendered his trial counsel's representation ineffective.
*781 Petitioner has presented no reasons whatsoever for his failure to raise that additional factual allegation in his Rule 27.26 motion ineffective assistance of trial counsel claim based upon trial counsel's decision to call Ford to testify. Further, it is clear that, at the time he filed his Rule 27.26 motion, petitioner was thoroughly familiar with the circumstances surrounding his trial counsel's decision to call Ford as a witness. (See Respondent's Exhibit F, p. 30; Respondent's Exhibit H-1, Point I). Finally, the mere fact that petitioner's Rule 27.26 motion was drafted and filed pro se does not in and of itself constitute "cause" for failure to include that additional factual allegation therein. Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir.1988). Based upon the foregoing, the Court concludes that petitioner has failed to establish "cause" for his failure to include that additional factual allegation in his Rule 27.26 motion ineffective assistance of trial counsel claim based upon trial counsel's decision to call Ford to testify. Because petitioner has not established "cause," the Court does not need to examine whether petitioner has suffered "actual prejudice." Engle v. Isaac, 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 1575 n. 43, 71 L.Ed.2d 783 (1982); Leggins v. Lockhart, 822 F.2d 764, 768 (8th Cir.1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988).[19] Because petitioner has not established Wainwright v. Sykes "cause" and "actual prejudice" for his failure to include that additional factual allegation in his Rule 27.26 motion, this Court concludes that petitioner's procedural default is a bar to this Court considering that additional factual allegation in this federal habeas corpus proceeding. Therefore, in analyzing whether petitioner's trial counsel's representation was rendered ineffective by his decision to call Ford to testify, this Court will not consider whether trial counsel could have established the yellow car with black men in it fact by means of the testimony of the four other persons and without calling Ford, and thus could have established the exculpatory link between Ms. Lombardo's testimony and Ms. Robinette's testimony by means of the testimony of the four other persons and without calling Ford.
Third, as noted in Section III.B. above, petitioner's Habeas Ground B concerns petitioner's trial counsel's failure to present the exculpatory substance of Ford's testimony by means of a certain videotape or by means of the testimony of the investigating officer on the day of the murders. In Section III.B. above, the Court denied that Habeas Ground on the basis of petitioner's procedural default. Therefore, in considering petitioner's Habeas Ground A and in analyzing whether petitioner's trial counsel's representation was rendered ineffective by his decision to call Ford to testify, this Court will not consider whether petitioner's trial counsel could have presented *782 the exculpatory substance of Ford's testimony by means of that videotape or by means of the testimony of the investigating officer on the day of the murders.
c. It is in this narrow posture that this Court will analyze trial counsel's decision to call Ford to testify and will analyze that decision in light of the fact that Ford had undergone hypnosis prior to his trial testimony.
First, this Court concludes that, based upon the inculpatory evidence against petitioner at the close of the state's case, see supra footnote 14, and assessing attorney performance pursuant to an objective standard of reasonable professional conduct, a competent trial attorney would have concluded that there was a significant likelihood that the jury would find petitioner guilty of the Pope's Cafeteria murders. Further, a competent trial attorney would have concluded that offering no evidence in defense and simply attacking the sufficiency of the state's case would not appreciably decrease the likelihood that the jury would find petitioner guilty. Thus, the Court concludes that a competent trial attorney would have decided to formulate and present some defense for petitioner, and would have attempted to formulate and present a defense which would have appreciably decreased the likelihood that the jury would find petitioner guilty. Petitioner's trial counsel decided to present both of the defenses which were available to him: one, petitioner's own testimony, and two, the Ford-Lombardo-Robinette yellow car with black men in it defense.
Second, the Pope's Cafeteria murders occurred before 7:40 a.m. (the time that the Pope's employee discovered the bodies). Other than his own testimony, petitioner could not substantiate an alibi for the time period before 7:50 a.m. Further, petitioner attempted to explain his possession in Georgia of several thousand dollars in cash by testifying that he saved some money and that he stole a bank bag full of cash from a car parked in a shopping mall parking lot. Petitioner's trial counsel knew that there had been no reports of thefts of cash from cars parked in shopping mall parking lots in the area claimed by petitioner during the time period claimed by petitioner. In addition, petitioner's trial counsel knew that his own investigator had not been able to discover reports of any such thefts. Moreover, petitioner's trial counsel knew that the state's case included three confessions by petitioner and the fact that petitioner left St. Louis within days of the murders with a large sum of cash. With these factors in mind, the Court concludes that a competent trial attorney would have reasoned that the jury would not believe petitioner's own testimony, would not believe his alibi, and would find his explanation for his possession of the cash to be incredible. Thus, a competent trial attorney would have concluded that petitioner's own testimony would not appreciably decrease the likelihood that the jury would find petitioner guilty.
Third, a competent trial attorney thus would have been left with the conclusion that he had to put on a defense but also that petitioner's own testimony would not appreciable decrease the likelihood of the jury finding petitioner guilty. The Court therefore concludes that a competent trial attorney reasonably could, and probably would, decide to turn to the Ford-Lombardo-Robinette yellow car with black men in it defense. Because a competent trial attorney would conclude that this defense was petitioner's only viable defense and presented the only means to appreciably decrease the likelihood that the jury would find petitioner guilty, a competent trial attorney reasonably could, and probably would, decide to accept the risks involved in calling Ford to testify. A competent trial attorney reasonably could, and probably would, conclude that the benefits of Ford's testimony (providing the exculpatory link between Ms. Lombardo's testimony and Ms. Robinette's testimony; the fact that Ford initially did not identify petitioner) outweighed the risks of Ford's testimony (identification of petitioner), especially in light of the fact that Ford's identification of petitioner was subject to strong questioning. Finally, because Ford's testimony regarding the yellow car with black men in it was necessary to establish petitioner's *783 only viable defense (the exculpatory link between Ms. Lombardo's testimony and Ms. Robinette's testimony), a competent trial attorney's decision to call Ford to testify probably would not have changed merely because Ford had been hypnotized prior to his trial testimony.
Based upon the foregoing, the Court therefore concludes that, because a competent trial attorney reasonably could, and probably would, have acted exactly as petitioner's trial counsel did act, petitioner has failed to establish that his trial counsel's decision to call Ford to testify caused petitioner's trial counsel's representation to fall "below an objective standard of reasonableness and was outside the wide range of professionally competent assistance" under the circumstances. Fink v. Lockhart, 823 F.2d 204, 205 (8th Cir.1987); see Wright v. State of Minnesota, 833 F.2d 746, 749 (8th Cir.1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1481, 99 L.Ed.2d 709 (1988). Therefore, petitioner has failed to establish the first prong of the Strickland test.
Further, the Court concludes that, had petitioner's trial attorney decided not to call Ford to testify and thus decided to forego the Ford-Lombardo-Robinette yellow car with black men in it defense, there remained the significant likelihood that the jury would find petitioner guilty on the basis of the state's inculpatory evidence against petitioner. See supra footnote 14. Thus, petitioner has failed to establish that, had his trial counsel decided not to call Ford to testify, there is a reasonable probability that the result of petitioner's trial would have been different. See Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. Therefore, petitioner has failed to establish the second prong of the Strickland test.
For the foregoing reasons, petitioner's Amended Petition Habeas Ground A is denied on its merits.

2. Habeas Ground C.

Petitioner contends that he received ineffective assistance of trial counsel because his trial counsel called petitioner's defense investigator, Kenneth Ziegler, to testify in surrebutal. On post-conviction Rule 27.26 collateral review, the Missouri Court of Appeals considered and rejected petitioner's argument. Byrd v. State, 723 S.W.2d at 41-42. At trial, in an attempt to explain his possession in Georgia of several thousand dollars in cash, petitioner testified that he stole a bank bag full of cash from a car parked in a shopping mall parking lot. (Tr.Tr. Vol. III: p. 808, l. 3 through p. 809, l. 15). The state cross-examined petitioner about his theft and attempted to establish that petitioner had recently fabricated his theft explanation in order to create a "flaw" in the state's case against him. (Tr.Tr. Vol. III: p. 825, l. 12 through p. 829, l. 24). Then, in rebuttal to petitioner's testimony, the state called two police officers to testify that there were no reports of thefts during the relevant time period fitting the description of the theft that petitioner testified that he had committed. (Tr.Tr. Vol. III: pp. 881-890 and pp. 890-891). In surrebuttal, petitioner's trial counsel called Ziegler. Ziegler testified that, at the request of petitioner's trial counsel and early in the preparation of petitioner's defense, he investigated whether there were any reports of thefts during the relevant time period fitting the description of the theft that petitioner stated that he had committed. Ziegler testified that he had not discovered any such reports. (Tr.Tr. Vol. III: pp. 893-895).
Petitioner contends that Ziegler's testimony impeached petitioner's explanation for his possession in Georgia of the cash. Petitioner thus concludes that his trial counsel's decision to call Ziegler to testify rendered trial counsel's representation ineffective. The Missouri Court of Appeals made the factual determination that petitioner's trial counsel called Ziegler to testify in order to rebut the state's suggestion that petitioner's theft story was a recent fabrication. Byrd v. State, 723 S.W.2d at 482. This factual determination is entitled to the § 2254(d) presumption of correctness because it is fairly supported by the record. Strickland, 466 U.S. at 698, 104 S.Ct. at 2070; Kellogg, 741 F.2d at 1101.
In light of the fact that the state had already established by the testimony of two police officers that there were no reports of *784 thefts fitting the description of petitioner's purported theft, this Court concludes that a competent trial attorney reasonably could decide to call Ziegler to testify, and thus reasonably could decide to risk the further impeachment of petitioner's theft story, in order to rebut the suggestion of recent fabrication. The Court therefore concludes that petitioner has failed to establish that his trial counsel's decision to call Ziegler to testify caused trial counsel's representation to fall "below an objective standard of reasonableness and was outside the wide range of professionally competent assistance" under the circumstances. Fink, 823 F.2d at 205; see Wright, 833 F.2d at 749. Thus, petitioner has failed to establish the first prong of the Strickland test.
In addition, in light of the inculpatory evidence against petitioner, see supra footnote 14, petitioner has not established that, had trial counsel not called Ziegler to testify, there is a reasonable probability that the result of petitioner's trial would have been different. See Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. Thus, petitioner has failed to establish the second prong of the Strickland test.
For the foregoing reasons, petitioner's Amended Petition Habeas Ground C is denied on its merits.

3. Habeas Ground F.

Petitioner contends that he received ineffective assistance of trial counsel because his trial counsel failed to investigate and corroborate petitioner's whereabouts after 7:50 a.m. on October 23, 1980. On post-conviction Rule 27.26 collateral review, the Missouri Court of Appeals considered and rejected petitioner's argument. Byrd v. State, 723 S.W.2d at 42. The murders at the Pope's Cafeteria occurred prior to 7:40 a.m. on October 23 (the time that the Pope's employee discovered the bodies). Therefore, the relevancy of petitioner's whereabouts after 7:50 a.m. on that date is minimal at best. Petitioner thus has failed to establish that his trial counsel's failure to investigate and corroborate petitioner's whereabouts after 7:50 a.m. caused trial counsel's representation to fall "below an objective standard of reasonableness and was outside the wide range of professionally competent assistance" under the circumstances. Fink, 823 F.2d at 205; see Wright, 833 F.2d at 749. Further, petitioner has failed to establish that, had trial counsel investigated and corroborated petitioner's whereabouts after 7:50 a.m., there is a reasonable probability that the result of petitioner's trial would have been different. See Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. Thus, petitioner has failed to establish either prong of the Strickland test.
For the foregoing reasons, petitioner's Amended Petition Habeas Ground F is denied on its merits.

C. Habeas Ground R.
Petitioner contends that the cumulative effect of all the errors raised in his other Habeas Grounds has denied petitioner various constitutional rights. No Missouri court has addressed petitioner's argument.
"Each claim of constitutional deprivation asserted in a petition for habeas corpus must stand on its own, or ... fall on its own." Lee v. Lockhart, 754 F.2d 277, 279 (8th Cir.1985). If none of petitioner's Habeas Grounds individually and of itself entitle petitioner to federal habeas corpus relief, then petitioner's Habeas Grounds collectively do not entitle him to federal habeas corpus relief. Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir.1987) ("Twenty times zero equals zero."). Therefore, petitioner's Habeas Ground R is without merit.
For the foregoing reasons, petitioner's Amended Petition Habeas Ground R is denied on its merits.

VI. Petitioner's Motion for Discovery.

By his Motion for Discovery, petitioner seeks the following discovery: (1) a deposition of petitioner's trial counsel's supervisor, (Motion for Discovery, Exhibit A); (2) a videotape of Ford's initial identification of persons, (Motion for Discovery, Exhibit B, Request for Production of Documents and Things, Item 1); (3) an audiotape of the hypnosis session of Ford, (Id., Item 2); (4) *785 an audiotape of the hypnosis session of Ms. Robinette, (Id., Item 3); (5) certain Police investigatory documents, (Id., Item 4); (6) certain statistical data relating to murder warrants and murder trials in St. Louis County between 1977 and 1982, (Id., Items 5(a) through 5(f)); and (7) certain statistical data relating to the cases tried by the state's prosecutor at petitioner's trial, (Id., Items 6(a) through 6(g)).
Petitioner seeks discovery of his Motion for Discovery, Exhibit A and Exhibit B, Items 1 and 2, in order to support his ineffective assistance of trial counsel claims contained in his Habeas Grounds A, B, C, F, M, and Q. The Court does not believe that any of the information contained in this discovery could establish that petitioner's trial counsel rendered ineffective assistance of trial counsel under the Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), standard. Therefore, petitioner's motion for discovery, Exhibit A and Exhibit B, Items 1 and 2, are denied.
Petitioner seeks discovery of his Exhibit B, Item 3, in order to support his Habeas Ground N. The Court does not believe that the information contained in this discovery could establish that petitioner was denied due process because the trial court permitted Ms. Robinette to testify after she had been hypnotized. Therefore, petitioner's Motion for Discovery, Exhibit B, Item 3, is denied.
Petitioner has not demonstrated any use or need for the information contained in Exhibit B, Item 4. Therefore, petitioner's Motion for Discovery, Exhibit B, Item 4, is denied.
Petitioner seeks discovery of his Exhibit B, Items 5(a) through 5(d), in order to support his Habeas Ground H contention that in Missouri the death penalty is sought and inflicted disproportionately against blacks. Because proof of petitioner's contention would not entitle petitioner to federal habeas corpus relief, McCleskey v. Kemp, ___ U.S. ___, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), petitioner's Motion for Discovery, Exhibit B, Items 5(a) through 5(d), are denied.
Petitioner seeks discovery of his Exhibit B, Items 5(e) and 5(f) & Items 6(a) through 6(g), in order to support his Habeas Ground S to the extent that this Habeas Ground is a Swain challenge. Because the Court has denied petitioner's Swain challenge on the basis of procedural default due to the fact that petitioner did not raise a Swain challenge in Missouri state court, (see Section V.A.10 above), and because petitioner did not seek Swain discovery in Missouri state court, petitioner's Motion for Discovery, Exhibit B, Items 5(e) and 5(f) & Items 6(a) through 6(g), are denied.
For the foregoing reasons, petitioner's Motion for Discovery is denied.

VII. Conclusion.

By his Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus for a Person in State Custody, together with a one-page amendment to the Amended Petition, petitioner Maurice Oscar Byrd raises nineteen grounds for federal habeas corpus relief denominated Habeas Grounds (A) through (S). In Section III.B. above, this Court denied petitioner's Habeas Grounds B, M, and Q on the basis of procedural default. In Section IV.C. above, this Court denied petitioner's Habeas Grounds D and E on their merits. In Section V.A. above, this Court denied petitioner's Habeas Grounds G, H, I, J, K, L, N, O, and P on their merits, and denied petitioner's Habeas Ground S in part on its merits and in part on the basis of procedural default. In Section V.B. above, this Court denied petitioner's Habeas Grounds A, C, and F on their merits. In Section V.C. above, this Court denied petitioner's Habeas Ground R on its merits. In Section VI. above, this Court denied petitioner's Motion for Discovery.
For all the foregoing reasons stated herein, petitioner Maurice Oscar Byrd's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus for a Person in State Custody is denied.
This Court's November 30, 1987, Order staying the execution of the death penalty on petitioner until further order of this *786 Court is rescinded and replaced by an Order staying the execution of the death penalty on petitioner Maurice Oscar Byrd for the thirty (30) days following this date.

ORDER AND MEMORANDUM
IT IS HEREBY ORDERED that petitioner's motion to reconsider, to vacate orders denying writ and denying discovery, to reopen, and for a further stay of execution pending resolution of these motions be and hereby is denied.
Petitioner's present motion is directed at the Court's decision to evaluate and rule upon petitioner's motion for discovery simultaneously with petitioner's underlying petition for a writ of habeas corpus. In a federal habeas corpus proceeding, discovery is permitted only if the discovery sought could entitle the habeas petitioner to habeas corpus relief on a claim which he has properly presented. Likewise, an evidentiary hearing is required only if the habeas petitioner alleges facts which, if proven, would entitle him to habeas corpus relief on a claim which he has properly presented. Thus, the Court is able to evaluate whether discovery and/or an evidentiary hearing is appropriate only after the Court evaluates and analyzes the merits and procedural posture of the underlying claims. Thus, for example, the Court denied petitioner's Motion for Discovery, Exhibit B, Items 5(a) through 5(d) because the Court concluded that petitioner's Habeas Ground H was without merit. Similarly, the Court denied petitioner's Motion for Discovery, Exhibit B, Items 5(e) and 5(f) & Items 6(a) through 6(g) because petitioner procedurally defaulted his Swain challenge by not raising it in state court.
In petitioner's present motion, petitioner cites certain evidence to support his Swain challenge. However, because petitioner procedurally defaulted his Swain challenge, petitioner's evidence does not entitle petitioner to habeas corpus relief. With respect to petitioner's Habeas Ground D, after fully analyzing the claim as presented by petitioner, the Court concluded that an evidentiary hearing was not required. Finally, the parties fully briefed all of petitioner's Habeas Grounds and the Court, after closely analyzing those Habeas Grounds, determined that oral argument was not necessary.
For the foregoing reasons, petitioner's motion is denied. In addition, the Court concludes that an extension of the current stay of execution is not warranted.
NOTES
[1] Petitioner raises those twelve points in his Amended Petition for Habeas Corpus as follows: Direct Appeal Points I, II, III, IV, V, VI, VII, and VIII correspond respectively to petitioner's Habeas Grounds G, I, J, K, L, N, O, and H; Post-Conviction Points I, II, III, and IV correspond respectively to petitioner's Habeas Grounds A, C, F, and S. Indexed in terms of petitioner's Amended Petition, his Habeas Grounds A, C, F, G, H, I, J, K, L, N, O, and S correspond respectively to Post-Conviction Points I, II, and III, Direct Appeal Points I, VIII, II, III, IV, V, VI, and VII, and Post-Conviction Point IV.
[2] Because petitioner cannot file a successive Rule 27.26 motion under Rule 27.26(d) because Rule 27.26 has been repealed, the Court will not address respondents' assertion that petitioner could not raise his Habeas Grounds B, M, and Q by a successive Rule 27.26 motion because petitioner could have raised these Habeas Grounds in his prior Rule 27.26 motion and petitioner does not have good cause for his failure to raise these Habeas Grounds in that prior Rule 27.26 motion. See Snethen v. Nix, 736 F.2d 1241, 1245 (8th Cir.1984); Wayne v. White, 735 F.2d 324, 325 (8th Cir.1984); Lindner v. Wyrick, 644 F.2d 724, 726-727 (8th Cir.), cert. denied, 454 U.S. 872, 102 S.Ct. 345, 70 L.Ed.2d 178 (1981).
[3] Petitioner's trial counsel's underlying decision to call Ford as a witness in order to present Ford's exculpatory testimony in the first place is the subject of petitioner's Habeas Ground A (which also is an ineffective assistance of trial counsel claim). See Section V.B.1. below. Petitioner did raise Habeas Ground A in his 27.26 motion as his ground A.1 therein (see Respondent's Exhibit F, p. 30), and in his appeal of the denial of his Rule 27.26 motion as his Point I. (See Respondent's Exhibit H-1, Point I). The Missouri Court of Appeals extensively analyzed petitioner's trial counsel's underlying decision to call Ford as a witness. See Byrd v. State, 723 F.2d at 38-41. Although petitioner's Habeas Grounds A and B do both arise from petitioner's trial counsel's decision to present the exculpatory substance of Ford's testimony directly by Ford testifying, the factual allegations contained in Habeas Ground B are significantly different from the factual allegations contained in Habeas Ground A. Therefore, petitioner's Rule 27.26 point raising Habeas Ground A did not "fairly present" Habeas Ground B to the Missouri state courts. Sampson v. Love, 782 F.2d 53, 55 (6th Cir.), cert. denied, 479 U.S. 844, 107 S.Ct. 159, 93 L.Ed.2d 98 (1986); Davis v. Wyrick, 766 F.2d 1197, 1205 (8th Cir.1985), cert. denied, 475 U.S. 1020, 106 S.Ct. 1209, 89 L.Ed.2d 322 (1986); Stranghoener v. Black, 720 F.2d 1005, 1007 (8th Cir.1983) (per curiam). Thus, because petitioner did not present the facts alleged in Habeas Ground B to the state courts and because petitioner cannot now return to state court to raise his ineffective assistance of trial counsel claim based upon those alleged facts, petitioner must establish Wainwright v. Sykes "cause" and "actual prejudice" before being permitted to present Habeas Ground B in this federal habeas corpus proceeding. See Section V.B. below.
[4] Petitioner's Habeas Grounds J, K, L, and P also concern, in one way or another, the trial testimony of petitioner's second wife. Habeas Ground L specifically concerns the trial court's decision to permit or require petitioner's second wife to testify despite petitioner's claim of marital privilege. The Missouri Supreme Court devoted considerable attention to petitioner's claims regarding the testimony of his second wife. See State v. Byrd, 676 S.W.2d at 500-504.
[5] As regards "actual prejudice," in light of the inculpatory evidence against petitioner (for example: the fact that petitioner left St. Louis and went to Georgia within days of the murders with several thousand dollars in cash in his possession for which he could not provide a credible explanation; petitioner's second wife's testimony regarding petitioner's confession to her; James Marion Mydell's testimony regarding petitioner's confession to him (Mydell); and Oscilous Green's testimony regarding petitioner's confession to him (Green); see also infra footnote 14), the Court concludes that petitioner's trial counsel's mode of presenting the testimony of Ford and failure to cross-examine witnesses regarding reward money could not have resulted in "actual prejudice." These putative errors by petitioner's trial counsel are insignificant in light of the evidence against petitioner. With respect to Ford's exculpatory testimony, see the discussion below in Section V.B.1. With respect to trial counsel's failure to cross-examine witnesses regarding reward money, this failure is insignificant in light of the fact that the jury was fully informed of the circumstances surrounding petitioner's second wife's testimony (see Respondent's Exhibit A, Trial Transcript [hereinafter "Tr.Tr."] Vol. III: p. 702, l. 20 through p. 703, l. 10, p. 706, ll. 4-13, and p. 708, ll. 3-22; see also infra Section V.A.5.) and that petitioner's trial counsel extensively cross-examined Mydell and Green regarding their trial testimony against petitioner. (See Tr.Tr. Vol. II: pp. 679-702 [Mydell]; pp. 651-657 [Green]). The Court concludes that these two putative errors simply do not create a reasonable probability that petitioner was convicted not because he was guilty, but because of the alleged putative errorsthe alleged ineffective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 694 & 695, 104 S.Ct. 2052, 2068 & 2069, 80 L.Ed.2d 674 (1984). However, because the testimony of petitioner's second wife was the state's strongest evidence against petitioner, had petitioner's trial counsel succeeded in preventing her from testifying, there is a reasonable probability that petitioner would have been acquitted. Thus, if an investigation into the whereabouts of petitioner's first wife and an interview of her would have resulted in the disclosure of facts which would have prevented petitioner's second wife from testifying, then petitioner's trial counsel's failure to conduct such an investigation and interview would have resulted in "actual prejudice" to petitioner. Petitioner's second wife could have been prevented from testifying only if petitioner proved that he and his first wife were divorced prior to his marriage to his second wife. Petitioner himself testified that he had not obtained a divorce from his first wife. (Tr.Tr. Vol. III: p. 830, ll. 16-18). Thus, an investigation and interview could have prevented petitioner's second wife from testifying only if the investigation and interview would have disclosed that petitioner's first wife had obtained a divorce from petitioner prior to petitioner's marriage to his second wife. Because petitioner fails to claim that an investigation and interview would have disclosed that petitioner's first wife had so obtained a divorce from petitioner prior to petitioner's marriage to his second wife, petitioner cannot show any "actual prejudice" resulting from his trial counsel's failure to investigate the whereabouts of his first wife and thereafter to interview her.

For the foregoing reasons, the Court concludes that petitioner has failed to establish any "actual prejudice" to his defense resulting from the state court's failure to address the merits of petitioner's Habeas Grounds B, M, and Q.
[6] The Missouri Constitution Article IV, § 7 provides:

Reprieves, commutations and pardonslimitations on power
Section 7. The governor shall have power to grant reprieves, commutations and pardons, after conviction, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to provisions of law as to the manner of applying for pardons. The power to pardon shall not include the power to parole.
In Missouri, executive clemency pursuant to Article IV, § 7 is an "act of grace" on the part of the Governor of Missouri, and only the Governor has the right and power to grant reprieves, commutations, and pardons. State ex rel. Stewart v. Blair, 356 Mo. 790, 203 S.W.2d 716, 718, 719 (banc 1947), overruled in part by, Guastello v. Dept. of Liquor Control, 536 S.W.2d 21, 25 (Mo. banc 1976). Thus, petitioner would not have any right to executive clemency based upon his newly discovered evidence.
[7] The Missouri Court of Appeals' decision to remand is discretionary and is limited to extraordinary circumstances. State v. Davis, 698 S.W.2d 600, 603 (Mo.App.1985). In Mooney and in State v. Williams, 673 S.W.2d 847 (Mo.App. 1984), the Missouri Court of Appeals did remand the cases to permit the criminal defendants to file new trial motions based upon new evidence discovered after the time to file Rule 29.11 motions had expired. See also State v. Mooney, 714 S.W.2d 216 (Mo.App.1986) (on appeal after the remand, the Missouri Court of Appeals affirmed the trial court's denial of the motion for new trial). In Hamilton and in Davis, the Missouri Court of Appeals denied the criminal defendants' motions to remand to the trial court to permit the filing of new trial motions.
[8] This lack of power on the part of the Missouri Court of Appeals may explain the Missouri Court of Appeals' denial without prejudice of petitioner's "Motion to Remand to the Trial Court for Hearing on Motion for New Trial Due to Newly Discovered Evidence" and "Motion for Leave to File Appellant's Exhibits and etc.," (Petitioner's Exhibit E, p. 110, first item, pp. 111-125, and pp. 126-128), and may explain the Missouri Supreme Court's denial of petitioner's "Petition in Mandamus." (Petitioner's Exhibit E, p. 68, and pp. 69-82).
[9] In any event, respondents have waived any exhaustion requirement for Habeas Grounds D and E by failing to interpose an exhaustion objection in their Response. (See Respondents' Response at pp. 31-38).
[10] In addition, the Court notes that respondents' contention that petitioner's failure to apply to the Governor of Missouri for executive clemency or pardon creates a procedural bar to federal court consideration of petitioner's Habeas Grounds D and E wholly misconstrues the doctrine of procedural bars to federal habeas corpus claims. Essentially, the federal procedural bar is caused by a state procedural bar; if there is no state procedural bar, then there is no federal procedural bar. A state procedural bar arises because the state had a remedy for the habeas petitioner's claim, which remedy the habeas petitioner could have pursued, but which he did not pursue, and which he no longer can pursue. Wainwright v. Sykes, 433 U.S. 72, 80-83, 97 S.Ct. 2497, 2503-2504, 53 L.Ed.2d 594 (1977). With respect to applications to the Governor of Missouri for executive clemency or pardon, there is no state procedural bar which prevents petitioner from applying to the Governor of Missouri for executive clemency or pardon even at this late date. Petitioner's earlier failure to so apply does not prevent or bar petitioner from applying now. Thus, because there is no state procedural bar, there is no federal procedural bar. Respondents' objection to petitioner's Habeas Grounds D and E based upon petitioner's failure to apply to the Governor for executive clemency or pardon should have been framed as an exhaustion objection, not as a procedural bar objection. (In any event, the exhaustion doctrine does not apply to state executive clemency or pardon procedures. See 28 U.S.C. § 2254(b); text at supra footnote 9. Further, any exhaustion objection has now been waived. See supra footnote 9.)
[11] Under Missouri law, in order for a criminal defendant to establish a right to a new trial based upon newly discovered evidence, the criminal defendant must establish:

(1) the evidence has come to the knowledge of the defendant since the trial, (2) the failure to discover the evidence sooner was not caused by defendant's lack of due diligence, (3) the evidence is so material it would probably produce a different result at a new trial, and (4) the evidence is not simply cumulative nor does it merely impeach the credibility of a witness. State v. Harper, 473 S.W.2d 419, 421 (Mo. banc 1971).
State v. Hamilton, 732 S.W.2d 553, 556 (Mo.App. 1987). The Court notes that the third of these factors is substantially identical to the Eighth Circuit's standard for granting federal habeas corpus relief on the basis of newly discovered evidence. See Mastrian, 554 F.2d at 822-823.
[12] An employee of Pope's Cafeteria discovered the bodies at about 7:40 a.m. and the Police arrived on the scene at around 7:45 a.m. Respondents critique "Anita's" proposed testimony by noting, inter alia, that she does not state what time the events she describes occurred.
[13] Respondents describe "Anita's" proposed testimony as "incredible" and describe her explanation for not coming forward with her proposed testimony for six years as "incredible."
[14] The state's evidence inculpating petitioner included: the fact that petitioner had serviced Pope's Cafeteria (as an exterminator) twice in the month of October 1980 before the murders; Lori Robinette's testimony that, when she arrived at work on the morning of October 23, 1980, at around 7:50 a.m., petitioner was already there and was seated, together with another person, in a car other than the one in which he normally drove to work; the fact that petitioner called work at around 10:00 a.m. on October 23 and took the rest of the day off sick, and then never returned to work again, and never picked up his final paycheck; the fact that petitioner left St. Louis and went to Georgia within days of the murders with several thousand dollars in cash for which he could not provide a credible explanation (see Tr.Tr. Vol. II: p. 791, l. 1 & ll. 13-18; Tr.Tr. Vol. III: p. 808, l. 3 through p. 809, l. 15; see also Tr.Tr. Vol. II: p. 427, l. 20 through p. 428, l. 3); and, most importantly, petitioner's three confessions (his confession to his second wife, Mrs. Byrd, that he had killed some people in St. Louis to be with her and their baby in Georgia [Tr.Tr. Vol. II: p. 702, l. 18 through p. 704, l. 17 and p. 708, II. 12-20]; his confession to James Marion Mydell, a cellmate in Georgia, that he had killed some people in a restaurant in St. Louis during a robbery [Tr.Tr. Vol. II: pp. 676-679]; and his confession to Oscilous Green, the former husband of petitioner's second wife's sister, that he had killed some people in a restaurant in Missouri during a robbery [Tr.Tr. Vol. II: pp. 643-653]).
[15] The Court notes that the operative effect of the fact that Missouri does not have a post-conviction court procedure by which petitioner can raise his claim of entitlement to a new trial is that petitioner can bring that claim by way of a federal habeas corpus petition without being required to exhaust any state court remedies with respect to that claim. Thus, this Court is able to consider petitioner's Habeas Ground D on its merits despite the fact that petitioner has not presented his Habeas Ground D to a Missouri state court with the power to grant petitioner a new trial. (See Sections IV.A. & B. above).
[16] Since petitioner's trial, Missouri law on impeachment of witnesses has changed. Now, in civil cases, "any party [may] introduce a prior inconsistent statement to impeach any witness regardless of by whom the witness may have been subpoenaed or called." Rowe v. Farmers Insurance Co., 699 S.W.2d 423, 425 (Mo. banc 1985). In addition, for certain criminal cases, Missouri has enacted a statute permitting prior inconsistent statements to be admitted as substantive evidence. Mo.Rev.Stat. § 491.074. See State v. Dunn, 731 S.W.2d 297, 299-300 (Mo. App.1987); see also State v. Moutray, 728 S.W.2d 256, 262 (Mo.App.1987).
[17] In federal court, the marital privilege is a federal common law privilege under Fed.R. Evid. 501, Trammel, 445 U.S. at 47, 100 S.Ct. at 910, and it permits a witness spouse to refuse to testify adversely to a defendant spouse. Id. at 53, 100 S.Ct. at 914.
[18] On November 21, 1985 (after the United States Supreme Court denied certiorari on petitioner's direct appeal, see Byrd v. Missouri, 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985)), the Missouri Supreme Court held that, under Missouri law, post-hypnotic "hypnotically induced testimony" is no longer admissible in Missouri state court. Alsbach v. Bader, 700 S.W.2d 823, 830 (Mo. banc 1985). Because the Alsbach rule is a mere rule of evidence, Missouri does not apply it retroactively to cases tried before the date of the Alsbach decision. State v. Reasonover, 714 S.W.2d 706, 720 (Mo. App.1986), cert. denied, ___ U.S. ___, 107 S.Ct. 1580, 94 L.Ed.2d 771 (1987).
[19] The Court also concludes that petitioner has not established "actual prejudice" from trial counsel's decision to call Ford to testify instead of proving the yellow car with black men in it fact by the testimony of the four other persons. First, the Court concludes that, even if trial counsel could have established the yellow car with black men in it fact, and thus could have established the exculpatory link between Ms. Lombardo's testimony and Ms. Robinette's testimony, by means of the testimony of the four other persons and without calling Ford to testify, petitioner nevertheless has not established that it fell below an objective standard of reasonable professional conduct for his trial counsel to decide to call Ford to testify to establish the yellow car with black men in it fact. Ford's testimony was more specific: three black men, one of whom carried a plastic trash bag; and Ford's testimony was based upon his observation in the parking lot of the West County Shopping Mall. Second, the Court concludes that, even if trial counsel's decision did fall below an objective standard of reasonable professional conduct, in light of the inculpatory evidence against petitioner, see supra footnote 14, and in light of the fact that the jury rejected petitioner's yellow car with black men in it defense when the defense was based upon Ford's more specific testimony regarding the yellow car and black men, petitioner nevertheless has not established a reasonable probability that the jury would have accepted the yellow with black men in it defense if the yellow car with black men in it fact had been proven by the testimony of the four other persons, and thus has not established a reasonable probability that proving the yellow car with black men in it fact by the testimony of the four other persons would have caused the result of petitioner's trial to be different. See Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.